In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2000

United States of America,

Plaintiff-Appellee,

v.

Johnnie L. White,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 922-4--Robert W. Gettleman, Judge.

Argued January 24, 2001--Decided February 16, 2001

Before Flaum, Chief Judge, and Evans and Williams,
Circuit Judges.

Flaum, Chief Judge.  Johnnie White was indicted
as a result of his participation in an elaborate
insurance fraud scheme. During the course of
trial, the government presented voluminous
evidence which implicated White in the cabal.
White took the stand in his defense, and
categorically denied his involvement. After the
jury convicted White on all counts, the
government sought a two-level sentencing
enhancement for obstruction of justice. The
district court, finding that White's testimony
constituted perjury, granted the two-level
enhancement, and sentenced White to 27 months
imprisonment. White has appealed his sentence,
arguing that the district court erred in applying
the obstruction of justice enhancement. For the
reasons stated herein, we affirm the sentencing
decision of the district court.

I.  BACKGROUND

For many years, Johnnie White participated in
an intricate scheme to defraud insurance
companies. Coordinating the scam was Louis Himes,
Sr., part-owner and operator (along with Jake
Hightower) of Jake's Auto Repair ("Jake's Auto").
To conduct the machination, the pair first
recruited friends and family members to act out
the roles of "victims." If one of these

individuals had a vehicle that he or she could no longer afford, that person would often allow the automobile to be used as a "prop" in the staged accident. If the victim's car was not already sufficiently wrecked, or if it was not damaged at all, employees from Jake's Auto would intentionally damage the vehicle by crashing it into a brick wall, or smashing it with a sledgehammer. Once a car looked as if it had been wracked in an accident, Himes would employ that vehicle in one, if not a multitude, of his staged productions.

When the actors and the vehicles had been secured, rehearsals began. Participants were told, or in certain instances given scripts, detailing how the fictionalized collision took place. As soon as the victims were confident in their roles, they were either escorted to the scene of the alleged accident, or sometimes asked to stage the accident themselves. Thereafter, employees from Jake's Auto would accompany the victims to police stations to file false police reports. On certain occasions, White assisted participants in their conversations with officers, and in other instances he even played the role of an accident victim.

Subsequent to the filing of the false police reports, Himes arranged for the victims to file false insurance claims. These claims were either for damages to the car, which was supposedly being fixed by Jake's Auto, or for medical injuries stemming from the alleged accident. To these ends, Jake's Auto provided legitimacy to the scheme, allowing insurance adjustors to view the damaged vehicles in the shop where they were supposedly being repaired. The scam was often successful, as numerous insurance companies issued settlement checks via mail to alleged victims. Victims were accompanied by Jake's Auto employees, including White, to cash their settlement checks. The victims received a portion of the proceeds, with Himes and his co-owner Hightower keeping the rest. White was compensated for his role in the scheme through his weekly paycheck from Jake's Auto.

On December 15, 1998, White was charged, along with 29 others, in a 17-count indictment. Specifically, White was indicted on three counts of mail fraud, and aiding and abetting mail fraud, in violation of 18 U.S.C. sec. 1341 and 18 U.S.C. sec. 2. Because of his known and admitted heroin addiction, each morning before trial White's blood was tested for the presence of heroin. Throughout the course of the proceedings, White tested negative for the substance. At trial, the government paraded eight witnesses who testified that White knowingly and actively

participated in the insurance fraud scheme. These witnesses, a group which included White's cousin and friends, provided first-hand accounts that White picked up cars that would be used as props, damaged cars, escorted participants to and from accident scenes, arranged accident scenes to look realistic, escorted participants to police stations, helped participants file false police reports, and otherwise facilitated the fraudulent accident scheme at Jake's Auto. Despite the copious eyewitness evidence, White took the stand in his defense, denying his involvement in the scheme. In the course of his testimony, White denied knowledge of participants he had personally recruited, as well as any role in the fraud.

On November 4, 1999, a jury convicted White on all three charges. In recognition of the fact that White's testimony was uniformly contrary to the government witnesses who testified that White was personally involved in the accident fraud scheme, the Pre-Sentence Investigation Report ("PSR") recommended that White be given a two-level upward adjustment pursuant to U.S.S.G. sec. 3C1.1, in that his testimony was perjured and amounted to an obstruction of justice. The court conducted a sentencing hearing on April 5, 2000, in which it agreed with the PSR that White had perjured himself at trial. The court acknowledged that White had a drug problem and stated that it believed "it would be very dangerous to penalize somebody for exercising his constitutional right to go to trial," as "everybody has a right to stand and put the Government to their proof and to make them prove guilt beyond a reasonable doubt." However, the court continued, "when somebody takes the stand and commits perjury, the guidelines do provide for an enhancement." Thus, the court concluded that "despite everything Mr. White said about being high and doing all this, he wasn't high when he testified, he knew exactly what he was saying when he testified, and he was committing perjury, and I think that the two-point enhancement is appropriate in this case."

With the two-level enhancement for obstruction of justice, White had a sentencing level of 18. Because his criminal history was considered Category I, White fell within a sentencing range of 27-33 months imprisonment. The court sentenced White to the low end of that range, namely 27 months, followed by three years of supervised release. The court also ordered White to pay restitution, jointly and severally with his co-defendants, in the amount of $349,198.74. Thereafter, White appealed his sentence, arguing that the district court erred in applying the two-level enhancement for obstruction of justice.

II. DISCUSSION
A. Standard of Review

The Sentencing Guidelines permit a sentencing court to enhance a defendant's offense level by two points if it finds, by a preponderance of the evidence,/1 that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. sec. 3C1.1; United States v. Hickok, 77 F.3d 992, 1006 (7th Cir. 1996). In determining whether to apply the enhancement, actual prejudice to the government as a result of the defendant's conduct is not required. United States v. Nobles, 69 F.3d 172, 192 (7th Cir. 1995) (the defendant's "ultimate lack of success for obstructing justice will not relieve his responsibility for his attempt to do so.").

Both the Supreme Court and Seventh Circuit case law establish that perjury is a type of conduct that warrants an enhancement for obstruction of justice. See United States v. Dunnigan, 507 U.S. 87, 93 (1993); United States v. Woody, 55 F.3d 1257, 1273 (7th Cir. 1995); see also U.S.S.G. sec. 3C1.1 cmt. 3(b). One commits perjury if, while under oath, he or she gives false testimony concerning a material matter with a willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. See Dunnigan, 507 U.S. at 93. Whether one has obstructed justice by committing perjury is a factual determination which enjoys the presumption of correctness under the clearly erroneous standard. See Hickok, 77 F.3d at 1007. Thus, we will not disturb a sentencing court's decision on such a matter unless we are firmly convinced that the judge was mistaken when he or she determined that perjury had been committed. Id. In other words, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, [an appeals court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985). Finally, special deference is given to findings based on credibility determinations, which seldom constitute clear error. Id. at 575.

B. Willfulness of White's Testimony

White asserts on appeal that the district court clearly erred in finding that the two-level enhancement for obstruction of justice was appropriate to his case./2 Specifically, as he did before he was sentenced, White puts forth that, at the time he participated in the

insurance scheme, he was consistently under the influence of heroin. He suggests that as a result of his constant heroin use, his memory of events pertaining to that period of time is quite hazy. Since his false testimony was the result of faulty memory, he claims, the district court erred in finding that he had willfully intended to provide false testimony, as is required for a finding of perjury./3

While we are sympathetic to White's assertion that his false testimony may have resulted from memory lapses caused by the long-term effects of habitual drug use, we cannot concur that the district court committed error (let alone clear error) in finding White's claim unpersuasive. As the government has noted, White did not take the stand in his defense and claim that his heroin use had caused him not to remember what he had done during the years in question. Were that the case, it is unlikely that an obstruction of justice enhancement would have been sought or granted. Rather, White flatly and categorically denied involvement in the scheme, in blatant contradiction to numerous witnesses' testimonies. As stated above, at the time of his trial and testimony, White was not under the influence of drugs. Testifying soberly, he denied facts which he now claims he could not recall. Assuming arguendo that White is not now prevaricating, and that he truly could not remember the events concerning his role in the insurance scam, his testimony at trial asserting that he did not participate in the scheme is still sufficient to warrant an obstruction of justice enhancement. See United States v. Gage, 183 F.3d 711, 716 (7th Cir. 1999) (finding that the defendant could perjure himself for purposes of U.S.S.G. sec. 3C1.1 by representing that he remembered an event when he did not). Thus, whether White's drug use influenced his memory of events does not detract from the finding that he had willfully intended to provide false testimony. Therefore, we conclude the district court did not clearly err in determining that White had obstructed justice by perjuring himself during the course of trial.

C. Necessity of Individualized Findings of Perjury

White's other contention on appeal is that the district court failed to make a finding regarding which specific testimony amounted to perjury./4 As we noted in Hickok, the "independent finding requirement" is not as exacting as one would assume. 77 F.3d at 1008. While the Supreme Court has articulated that, when making a finding of perjury, it is preferable to have the district court address each element of the alleged perjury in a separate and clear finding, the district court's determination that the obstruction of

justice enhancement is required is sufficient if "the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Dunnigan, 507 U.S. at 95. Hence, it is not necessary for the sentencing judge to conduct a mini-trial with respect to each of the defendant's false statements, nor must the judge set forth his or her findings specifically in terms of the elements of perjury. As we have interpreted Dunnigan, separate findings are not strictly necessary so long as the court determined that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt. See Hickok, 77 F.3d at 1008 (citing United States v. Mustread, 42 F.3d 1097, 1105 (7th Cir. 1994).

Reviewing the record in this matter, we find that the factual findings of the district court are consistent with the requirements set forth in Dunnigan. The sentencing transcript makes evident that the court determined that White knew what he was saying and doing when he took the stand and denied basic facts regarding his participation in the fraud. As was noted during oral argument, White did not deny, in a piecemeal fashion, specific conduct during the relevant stretch of time. Rather, he systematically and in a wholesale fashion contradicted the eyewitness testimonies of eight witnesses concerning every aspect of his participation in the insurance fraud. Given that White's relevant testimony as a whole was predominately falsified, we believe it was unnecessary for the court to peruse the trial transcript to point out every instance in which White perjured himself. As such, we find that the district court's finding of perjury was sufficiently established.

III.  CONCLUSION

Like the district court, we recognize that a defendant does have a right to force the government to meet its burden in establishing the elements of an offense. We have been careful to note that a simple denial of culpability cannot serve as the basis of an obstruction of justice enhancement pursuant to sec. 3C1.1. See Hickok, 77 F.3d at 1007; United States v. Contreras, 937 F.2d 1191, 1194 (7th Cir. 1991). However, the law is unambiguous in that if a defendant decides to take the stand and tell the jury a story, he or she does so at the defendant's own risk. Hickok, 77 F.3d at 1007. If the defendant commits perjury, the court may, at the time of sentencing, enhance the defendant's sentence for obstructing justice. Id. That is precisely what happened here.

For the foregoing reasons, we Affirm the decision of the district court.

/1 In his brief, appellant argues that, pursuant to the Supreme Court's decision in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), in order to enhance White's sentence for obstruction of justice the district court was required to find beyond a reasonable doubt that White had done so. At oral argument, appellant conceded that the rule of Apprendi is inapplicable to these circumstances, in light of our decision in Hernandez v. United States, 226 F.3d 839 (7th Cir. 2000), but maintained that the district court erred by not finding obstruction of justice by a preponderance of the evidence.
/2 As we alluded to above, the majority of appellant's brief was devoted to challenging the district court's finding, in light of Apprendi, under the standard of beyond a reasonable doubt. Since appellant has abandoned that argument, we will examine his claim to determine whether the district court's finding of obstruction, by a preponderance of the evidence, was clearly erroneous.

/3 White does not challenge the other prongs of the perjury determination, namely materiality or falsity. Thus, we confine our review to the issue of willfulness.

/4 As the government correctly points out, this argument is only clearly presented in an argument heading in appellant's brief. While it is established that perfunctory or underdeveloped arguments are waived, see United States v. Andreas, 150 F.3d 766, 769-70 (7th Cir. 1998), we will grant the appellant a degree of latitude, and examine the merits of his claim.