**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued February 22, 2007
Decided February 28, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2461

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>FRANCISCO TORRES,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Southern District of Illinois.<br><br>No. 04 CR 30154<br><br>William D. Stiehl,<br>*Judge.* |

**ORDER**

Francisco Torres pleaded guilty without a plea agreement to drug dealing charges involving at least 12,000 doses of a methylene-based drug commonly known as "Ecstasy."  *See* 21 U.S.C. §§ 841(a)(1), 846.  The district court calculated a guidelines range of 235 to 293 months' imprisonment, but adjusted the range to 235 to 240 months to reflect the statutory maximum.  *See* 21 U.S.C. § 841(b)(1)(C).  The court then sentenced Torres to 235 months.  On appeal, he asserts that the district court erred by (1) presuming that a sentence within the guidelines was reasonable, (2) finding that the guidelines range did not account for Torres's prior juvenile offense and that it was therefore an "aggravating factor," and (3) failing to take into account the full extent of Torres's "mental illness."  We affirm.

Torres was arrested for his role in a drug operation in which he obtained Ecstasy from a supplier in New York and transported it to Belleville, Illinois for distribution. His co-conspirators included, among others, his mother Estelle Torres and his older sister Venise Torres, both of whom pleaded guilty and were sentenced to 37and 70 months' imprisonment, respectively. Torres pleaded guilty to conspiring to distribute and possess approximately 12,000 dosage units of Ecstasy between November 2002 and April 2004.

Prior to pleading guilty, Torres underwent two court-ordered psychological examinations. The first examination was performed by Maureen Burris, a Bureau of Prisons psychologist in Los Angeles. She diagnosed Torres with polysubstance dependence and antisocial personality disorder, but concluded that he was competent to stand trial. Dr. Burris's report noted that Torres had an extensive history of substance abuse beginning in childhood with alcohol and marijuana, and progressing into adulthood with PCP, heroin, cocaine, Ecstasy, methamphetamine, and hallucinogens. She also reported Torres's claim that his father committed suicide, his mother frequently abused alcohol and drugs when he was growing up, and he underwent mental health treatment as a child for "fits of rage."

The second psychological examination was performed several months later by William Ryan, a BOP psychologist in New York. He concurred with Dr. Burris that Torres suffered from polysubstance dependence and antisocial personality disorder, and that he was nonetheless competent to stand trial. Dr. Ryan also diagnosed Torres with depression in partial remission and stress due to his arrest and incarceration. Dr. Ryan further noted that Torres claimed that his mother physically abused him and his sisters and that he was placed in foster care on a number of occasions.

At sentencing, the district court adopted the presentence report's calculation of a guidelines range of 235 to 293 months' imprisonment and its adjustment of the range to 235 to 240 months to reflect the statutory maximum. The court then sentenced Torres to 235 months. In formulating the sentence, the court noted that it considered the two psychological reports, the sentencing hearing testimony of a postal service inspector concerning the drug conspiracy, Torres's allocution, the arguments of counsel for Torres and the government, and other evidence including a letter of support from a family member. The judge noted Torres's "substantial criminal history beginning at an early age, and some of which involved violent crimes." In addition, the judge observed that Torres has a propensity for violence (as evidenced by an armed robbery conviction as a juvenile), a tendency to malinger when it suits him, an antisocial personality disorder, and a drug problem. In mitigation, the court noted that Torres lacked adequate moral support from his family while growing up, and that some family members participated in the drug conspiracy with Torres. In imposing a sentence at the bottom of the guidelines

range, the court stated it believed the sentence served the purposes of 18 U.S.C. § 3553(a) by punishing Torres and acting as a deterrent to others, while also protecting society for a substantial period of time.

On appeal, Torres first asserts that the district court erred by presuming that a sentence within the guidelines range was reasonable. Specifically, Torres contends that the judge's statement "I do not believe that there are sufficient grounds for me to depart downward from the guideline range" indicates that the judge "erroneously presumed that a Guidelines sentence was the appropriate sentence."

A sentence that falls within the guidelines range is presumed reasonable on appellate court review. *United States v. Mykytiuk,* 415 F.3d 606, 607–08 (7th Cir. 2005). To comport with *United States v. Booker*, 543 U.S. 220 (2005), a district judge need only "consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006).

Here, Torres puts form over substance by arguing that the district judge's refusal to "depart downward" demonstrates that the judge believed himself presumptively obligated to impose a sentence within the guidelines. The sentencing transcript refutes Torres's claim. The judge explained that his sentencing determination was based on Torres's extensive criminal history, propensity for violence, antisocial personality disorder, drug problem, tendency to malinger, and troubled childhood. The judge also referenced the need to punish Torres, deter others, and protect the public. Rather than indicating a "presumption" to sentence within the guidelines, the transcript shows that the district judge based the sentence on Torres's history and personal characteristics and the need to provide just punishment for a serious offense. Thus, the district court properly considered the § 3553(a) factors, rather than a presumption of reasonableness, in imposing a sentence.

Next, Torres argues that the district court erred by finding that the guidelines range did not adequately take into account his prior juvenile offense and thus, Torres contends, the court improperly considered the offense as an additional "aggravating factor" in sentencing.

The sentencing guidelines do not include juvenile convictions in the calculation of a defendant's criminal history if more than five years have passed since the sentences for those offenses were imposed. *See* U.S.S.G. § 4A1.2(d)(2). However, during the pre-*Booker* era of "departures," a district judge could consider juvenile offenses indirectly during sentencing as part of the larger picture, including as evidence of a pattern of recidivism or criminal violence. *United States v. Spears,* 159 F.3d 1081, 1088 (7th Cir. 1998); *United States v. Croom*, 50 F.3d 433, 435 (7th

Cir. 1995).  Now that the sentencing discretion of district judges has increased after *Booker*, *United States v. Gama-Gonzales*, 469 F.3d 1109, 1110 (7th Cir. 2006), those judges may continue to consider juvenile offenses for this purpose.

Here, Torres does not contend that the district court used his juvenile conviction to increase his criminal history.  Rather, he seems to argue that the district court was forbidden to consider the juvenile conviction in the § 3553(a) evaluation, and had it so refrained, it would have imposed a below-guidelines sentence.  The court commented that Torres "did have an armed robbery conviction as a juvenile and does have – has had, I should say, the propensity for violence." This shows that the court considered his juvenile conviction as evidence of a recidivism and a propensity for violence—proper considerations both before *Booker* and, with sentencing discretion now augmented, after *Booker* as well.  In short, because "the history and characteristics of the defendant" are proper considerations under § 3553(a)(1), this was a reasonable exercise of the district court's discretion.

Finally, Torres asserts that the district court failed to take into account the full extent of his "mental illness."  Specifically, Torres argues that the court failed to "consider the possibility" that his malingering was "actually a cry for help" and failed to consider his diagnosis of depression or his "history of mental illness" dating back to sixth grade when he was "less likely to be malingering."

In exercising its sentencing discretion, the district court need only consider the relevant § 3553(a) factors and related arguments of the parties.  *See United States v. Cunningham*, 429 F.3d 673, 675–76, 678 (7th Cir. 2005).  Disagreement with the district court's assessment of the relevant factors does not alone merit reversal.  *United States v. Laufle*, 433 F.3d 981, 988 (7th Cir. 2006).

Here, the district court adequately considered the § 3553(a) factors.  The court heard arguments from Torres's counsel, who emphasized Torres's drug dependence and mental health history in mitigation.  In explaining its sentencing determination, the court explicitly noted that it had read the psychological reports—both of which discussed Torres's drug dependence, malingering, and mental health history in detail.  The court also noted Torres's drug problem and the desire that he obtain help while in prison  The fact that the district court did not give these factors the favorable weight that Torres desired does not demonstrate that the court failed to consider the factors or that its assessment of them was unreasonable. *Laufle*, 433 F.3d at 988.

AFFIRMED.