In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3247

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CRAIG L. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-CR-253—**Rudolph T. Randa**, *Judge*.

ARGUED MARCH 29, 2010—DECIDED JULY 16, 2010

Before CUDAHY and KANNE, *Circuit Judges*, and
DARRAH, *District Judge.**

DARRAH, *District Judge.* On September 23, 2008, Defendant-Appellant Craig L. Johnson was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The case proceeded to trial before a jury.

---

* Honorable John W. Darrah, United States District Judge
for the Northern District of Illinois, is sitting by designation.

Because the parties stipulated that Johnson had previously been convicted of a felony, the only issue for the jury to decide was whether or not Johnson was in possession of a gun that had traveled in interstate commerce. Milwaukee Police Officers testified that Johnson was asked during a traffic stop whether he had anything on his person and that Johnson told them he had a gun in his pocket. The officers then found a gun in Johnson's front pants pocket and arrested him.

Johnson took the stand in his own defense. On direct examination, Johnson denied having a gun—or even seeing a gun—on the day of his arrest and stated that the first time he had seen the gun was at trial. Also on direct examination, Johnson affirmed his prior felony convictions, testifying as follows: "Uhm, summer '98, '99, getting high, drugs, sharing drugs with this female friend of mine. Got a possession charge, party to a crime, possession with intent because I admitted to sharing drugs. . . . Party to the crime of possession. And the second crime was in 2002. I bought a gun. . . . felon in possession of a gun." (Trial Tr. III 8:13-9:1.) When asked on cross-examination why he bought a gun, Johnson said, "I mean, it was an old army gun. It was a United States army gun. It was, it was real old. I mean—. I thought it was worth something. 1911 was the date on it." (Trial Tr. III 27:19-21.)

The jury found Johnson guilty. After trial, the Presentence Investigation Report ("PSR") determined that Johnson's testimony at trial that he did not have a gun on his person was false and that Johnson had

falsely denied having a gun in his pocket when he was interviewed by a Milwaukee Police Detective the day after his arrest. (PSR ¶¶ 7, 9.) The PSR also determined that Johnson falsely testified about his prior weapons felony—by characterizing the weapon as an "antique gun"—and about his prior felony drug conviction—by saying it was the result of his sharing drugs with his friends. (PSR ¶ 8.) The PSR recommended a two-level increase for obstruction of justice, concluding that "[t]he defendant testified falsely at trial regarding the charged offense as well as the circumstances surrounding his prior convictions as noted above," that Johnson's "testimony at trial was in direct contrast with the testimony of the arresting officers, that "he falsely testified regarding the circumstances of his prior arrests," and that he "attempted to obstruct his prosecution with his false statements, which were in relation to his offense of conviction." (PSR ¶¶ 11, 18.)

The criminal history category as calculated in the PSR was IV, based on eight criminal history points: three for each of his two prior felony convictions and two for committing the instant offense while on supervised release for the earlier felon-in-possession crime. Citing section 4A1.3 of the Sentencing Guidelines, the PSR also noted that an upward departure may be warranted.

On August 31, 2009, Johnson appeared before the district court for sentencing. His sole objection to the PSR was to the obstruction enhancement pursuant to U.S.S.G. § 3C1.1. The district court's pertinent discussion of the issue of a two-level increase for obstruction of justice was as follows:

Well, relative to the objection, the Court obviously listened to the testimony. And when the Defendant was arrested he was asked, of course, according to the testimony of the Officers, whether or not he had anything that he shouldn't have. Said he had a gun in his pocket, which was later denied. And then, of course, we went to trial on that issue. And the Officers only testified that they took the weapon from the pocket, so the jury believed that testimony. That's where it was found. But—so one could say that that is just a defense. That is the Defendant's story. The Court views the testimony, however, as an extraordinary effort to minimize every type of involvement of the Defendant with this offense relative to his prior felony drug convictions. Of the sharing drugs. The Court has read the records, and it's not the case. And in addition, styling, the automatic, the Colt .45 1911, was issued in 1911. The Court is intimately familiar with the history of the Colt .45 . . . . it is not an antique. It is still a functioning, very dangerous weapon. So to minimize that is also something—in combination with that, the drug history, in the context of the defense in this case, which goes beyond the defense in this case to what the Court views as a mistruth—the Court is going to allow that presentence report to stand as it is.

(Sentencing Tr. 4:12-5:15.) The judge then stated that he would "proceed to sentencing with the sentencing guidelines that are established by that" and would "incorporate that into the standards set forth in 18 United States Code Section 3553." (Sentencing Tr. 5:16-19.)

After then hearing arguments from the Government and from Johnson's counsel, the district court discussed, among other things, Johnson's criminal history category:

> I think your attorney has made a good argument, and has put you in the best light that he possibly can. But I see the facts differently than he does. And as a result I think this criminal history is under-represented. And the criminal history category should be at a higher level. And I'm going to make that finding here, that it should be at least around a category 5, instead of a 4. I think it was a 4 at first. The criminal history category should be higher, and the Court is going to find that it is, given the analysis that the Court just conducted.

(Sentencing Tr. 23:16-25.)

The Government recommended 72 months' imprisonment. Johnson's counsel recommended 63 months. The Court imposed a sentence of 96 months to be served consecutively to an 11-month sentence previously imposed by another judge based on a revocation of Johnson's supervised release on another, unrelated offense. A 96-month sentence is at the top of the guideline range based on a criminal history category of V.

Johnson appeals his sentence, arguing (1) that the district court erroneously applied an obstruction enhancement without making the necessary findings and (2) that the court committed significant procedural and structural errors by increasing his criminal history category, making his sentence consecutive, and failing to ask Johnson and his counsel whether they had read the PSR.

## DISCUSSION

In reviewing a sentence, it must first be determined whether the district court committed any procedural error, such as improperly calculating the guideline range, failing to adequately explain the sentence imposed, treating the Guidelines as mandatory, or failing to consider the factors set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 51 (2007) (*Gall*). The district court's interpretation of the Sentencing Guidelines, as well as its application of the Guidelines to the facts, is reviewed *de novo*. *United States v. Abbas*, 560 F.3d 660, 662 (7th Cir. 2009) (citations omitted). Factual findings are reviewed for clear error. *United States v. Singh*, 483 F.3d 489, 496 (7th Cir. 2007) (citing *United States v. Ellis*, 440 F.3d 434 (7th Cir. 2006)).

If the sentence is procedurally sound, it is then reviewed for substantive reasonableness under an abuse-of-discretion standard. *United States v. Are*, 590 F.3d 499, 530 (7th Cir. 2009) (citing *Gall*, 552 U.S. at 51; *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009)).

### *Obstruction of Justice*

Section 3C1.1 of the Sentencing Guidelines provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1(A) (2009). Committing perjury is specifically listed as an example of

conduct that warrants such an enhancement. *See* U.S.S.G. § 3C1.1 Application Note 4(b).

To apply an enhancement on the basis that the defendant perjured himself, the district court should make a finding as to all of the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent. *United States v. Seward*, 272 F.3d 831, 838 (7th Cir. 2001) (*Seward*) (citing *United States v. Dunnigan*, 507 U.S. 87, 95 (1993) (*Dunnigan*)). Although it is preferable to have the district court address each element of the alleged perjury in a clear and separate finding, "separate findings are not strictly necessary so long as the court determined that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt." *United States v. White*, 240 F.3d 656, 662 (7th Cir. 2001) (*White*) (citing *United States v. Hickok*, 77 F.3d 992, 1008 (7th Cir. 1996) (*Hickok*)). To lie, after all, is "to present false information with the intention of deceiving," American Heritage Dictionary of the English Language (4th ed. 2009)—a definition which encompasses two of the three elements of perjury. If the lie occurs under oath and concerns a material issue, it is perjury.

This court has upheld obstruction enhancements in the absence of clear, individualized findings as to each element of perjury. In *White*, eight witnesses testified that the defendant, White, knowingly and actively participated in an insurance-fraud scheme. 240 F.3d at 659. In the face of this evidence, White took the stand in his own defense and denied any involvement in the

scheme. *Id.* White was convicted by a jury, and the case proceeded to sentencing. *Id.* The PSR recommended a two-level upward adjustment for obstruction of justice. *Id.* at 659-60. The sentencing judge applied the enhancement, stating, "[D]espite everything Mr. White said about being high and doing all this, he wasn't high when he testified, he knew exactly what he was saying when he testified, and he was committing perjury, and I think that the two-point enhancement is appropriate in this case." *Id.* at 660.

On appeal, White argued that the district court failed to make a finding regarding White's intent and failed to identify each specific statement that constituted perjury. *Id.* at 661. The district court's findings were held to be sufficient because it was evident from the sentencing transcript "that the court determined that White knew what he was saying and doing when he took the stand and denied basic facts regarding his participation in the fraud." *Id.* at 662. Also, the defendant "systematically and in a wholesale fashion contradicted the eyewitness testimonies of eight witnesses concerning every aspect of his participation in the insurance fraud," which made it unnecessary for the court "to peruse the trial transcript to point out every instance in which White perjured himself." *Id.*

In *United States v. Saunders*, 359 F.3d 874, 876 (7th Cir. 2004) (*Saunders*), the defendant, Saunders, was involved in an altercation with an acquaintance during which a firearm was discharged. Saunders was charged as a felon in possession of a firearm. *Id.* Several witnesses at

trial testified that Saunders had the gun in his possession moments before and after the altercation. *Id.* at 876-77. Nonetheless, Saunders took the stand in his own defense and testified that he never possessed the gun, that a hard object had been placed in his back during the struggle, and that the two men slipped in the snow and ended up with both of their hands and the gun in Saunders's pocket when the gun went off. *Id.* at 877. The district court applied the two-level, obstruction-of-justice enhancement, finding that Saunders told "a lie which no one would believe." *Id.* at 879. Although the court's findings were held to be "too skimpy," the error in that particular case was harmless because the record showed that the district court found Saunders's version incredible. *Id.*

Thus, although the district courts in *White* and *Saunders* did not provide specific, separate findings as to the falsity, intent, and materiality of specific statements, the sentencing judges in both cases created a record that allowed this court to determine that each court specifically found the defendant lied about a material issue. *See also United States v. Savage*, 505 F.3d 754, 763-64 (7th Cir. 2007) (holding district court's finding that defendant "obstructed or attempted to obstruct justice" was "regrettably slim" but constituted harmless error in light of clear record that defendant willfully lied about material matters contradicted by government witnesses and defendant's own expert); *United States v. Sheikh*, 367 F.3d 683, 687 (7th Cir. 2004) (affirming obstruction enhancement when the district court "specifically found that each defendant lied about knowingly redeeming illegally

obtained food stamps, a matter that is certainly crucial to each defendant's guilt"); *United States v. Brimley*, 148 F.3d 819, 823-24 (7th Cir. 1998) (affirming obstruction enhancement when the district court identified relevant testimony, expressly found that it was false, noted that it went to a critical issue in the case, and stated that it "had no hint of believability").

When it is not clear that the district court made the appropriate findings, however, the sentence must be vacated and remanded for resentencing. *See, e.g., Seward*, 272 F.3d at 838-39 (holding that district court's "bare holding that [defendant] was 'being untruthful'" was insufficient and made it nearly impossible for the court to assess whether the error was harmless); *United States v. McGiffen*, 267 F.3d 581, 591-92 (7th Cir. 2001) (holding that findings were insufficient to support obstruction enhancement when the district court merely stated, "I thought your testimony was riddled with inaccuracies and lies," without identifying specific statements or addressing the issues of materiality or intent). "[W]henever a district judge is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he exercised his discretion, that is, that he considered the factors relevant to that exercise." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).

In this case, it is undisputed that the district court did not articulate clear and separate findings as to the falsity, materiality, and intent of any statement made by

Johnson. Nor can the district judge's comments be reasonably construed as a general finding "that encompasses all of the factual predicates for a finding of perjury." *See White*, 240 F.3d at 656 (quoting *Dunnigan*, 507 U.S. at 95).

First, the judge did not clearly state his belief that Johnson made a false statement; he merely noted that the *jury* did not believe Johnson's testimony. After noting Johnson's pretrial denial of having a gun in his pocket, the district court said, "And the Officers only testified that they took the weapon from the pocket, so the jury believed that testimony. That's where it was found. But—so one could say that that is just a defense. That is the Defendant's story." (Sentencing Tr. 4:17-21.) But an obstruction enhancement is not warranted merely because the jury did not believe the defendant's testimony; the enhancement should only be applied if the *court* determines that the defendant committed perjury. *Seward*, 272 F.3d at 838. The record contains no such determination.

The sentencing judge further obscured the basis for his determination that Johnson committed perjury by transitioning directly into a discussion about Johnson's prior felonies, stating, "The Court views the testimony, however, as an extraordinary effort to minimize every type of involvement of the Defendant with this offense relative to his prior felony drug convictions." (Sentencing Tr. 4:21-24.) The judge then discussed the statements Johnson made about his previous felony conviction, making it unclear whether the court based its application of the obstruction enhancement on the testimony about

the gun, the testimony about the prior offenses, or both. The judge's comments regarding defendant's "effort to minimize" his involvement with the offense of conviction further confuse the issue; an "effort to minimize" something would not necessarily involve an intentional, material, false statement.

Moreover, if the judge applied the perjury enhancement based on Johnson's testimony about his prior offenses, those statements would not be material to the issue of guilt at trial or to Johnson's criminal history determination at the time of sentencing. A material statement is one that "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 Application Note 6; *see also United States v. Parker*, 25 F.3d 442, 449 (7th Cir. 1994) (holding that a false statement regarding defendant's take in a robbery was not material because it "was not 'designed to substantially affect the outcome of the case'") (quoting *Dunnigan*, 507 U.S. at 95). In this case, the only issue for determination by the jury during the trial was whether Johnson was in possession of a firearm that had traveled in interstate commerce. Johnson had stipulated that he had twice been convicted of a felony, and those convictions were not relevant to the trial issue of his gun possession. Likewise, Johnson's testimony about his previous convictions is immaterial as to his sentence because the stipulations would have increased his criminal history category regardless of his testimony.

On the record, it cannot be determined that the trial court found that Johnson made a particular material

false statement with willful intent, sufficient to enhance Johnson's sentence for obstructing justice. Therefore, the sentence must be vacated and remanded so the district court can further consider the issue of perjury by Johnson and make the appropriate findings if it determines an obstruction enhancement is applicable in this case.

*Other Asserted Procedural and Substantive Errors*

Johnson also identifies what he considers to be "significant procedural and substantive errors" committed by the district court in entering an above-guideline sentence.

First, Johnson argues that the district court erroneously relied on juvenile conduct and unrelated adult conduct in contravention of the factors set forth in section 4A1.3(a) of the Guidelines (providing for upward departures based on inadequacy of criminal history category). Although the judge did not specifically mention section 4A1.3(a) at sentencing, Johnson argues that the court nonetheless relied on that section when it made a specific "finding" that Johnson's criminal history category was under-represented and imposed a sentence above the guideline range calculated in the PSR.

A sentencing proceeding should begin with a calculation of the applicable guidelines. *Gall*, 552 U.S. at 49. After allowing both parties to argue for a particular sentence, the sentencing judge should then consider all of the mandatory § 3553(a) factors to determine whether they support the requested sentence and "must adequately explain the chosen sentence to allow for mean-

ingful appellate review and to promote the perception of fair sentencing." *Id.* at 50. Above-guideline sentences must be supported with "compelling justifications." *United States v. Gooden*, 564 F.3d 887, 890-91 (7th Cir. 2009) (citation omitted).

Because the Guidelines are now advisory, a sentencing court is not required to follow section 4A1.3 when imposing an above-guideline sentence. *United States v. Jackson*, 547 F.3d 786, 793 (7th Cir. 2008) (*Jackson*). Indeed, after *United States v. Booker*, 543 U.S. 220 (2005), "our cases have declared the concept of departures 'obsolete' and 'beside the point.' " *United States v. Walker*, 447 F.3d 999, 1006 (7th Cir. 2006) (compiling cases); *cf. United States v. Turner*, 569 F.3d 637, 640 (7th Cir. 2009) (noting that whether to apply a downward departure under U.S.S.G. § 4A1.3 "is a discretionary decision that has nothing to do with 'correct' Guidelines calculation" and is, thus, not a procedural error but a substantive decision to be reviewed for reasonableness).

Thus, a district court may impose an above-guideline sentence based on the factors set forth in § 3553(a) without adherence to U.S.S.G. § 4A1.3. Further, "[j]udges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005). Contrary to Johnson's argument, it is not improper for a district court to take a defendant's juvenile conduct into consideration at sentencing. Juvenile offenses may be

considered "as part of the larger picture, including as evidence of a pattern of recidivism or criminal violence." *United States v. Torres*, 217 Fed. Appx. 540, 543 (7th Cir. 2007) (noting that such considerations were proper in the pre-*Booker* era and that district judges now have even more discretion) (citations omitted).

Although not bound by the Guidelines, district courts may apply the departure guidelines "by way of analogy in analyzing the section 3553(a) factors." *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007) (citations omitted). In *Jackson*, for example, this court upheld an above-guideline sentence, finding that the judge's comments at sentencing "clearly indicated that he properly incorporated consideration of the § 4A1.3 policy statement into his overall § 3553(a) analysis." 547 F.3d at 793.

Here, however, the sentencing judge did not specifically reference section 4A1.3 and did not indicate that he was using that section by analogy in order to justify an above-guideline sentence. Nor did the judge specifically indicate that the sentence he imposed was a variance from the guideline range computed in the PSR. In his "Statement of Reasons," the judge determined the advisory guideline range (before departures) based on a criminal history category of V—not IV, as calculated in the PSR—and indicated he was imposing a sentence within the advisory guideline range. The court also stated as follows:

> The defendant's criminal history is under-represented. The Court found the defendant's criminal history is more appropriate as V due to offenses in which the

defendant was arrested but there was no prosecution or prosecution was declined. The defendant has repeatedly lied and is unsuccessful on community based supervision. Defendant admits he is not supervisable.

(Statement of Reasons § VIII.)

In sum, the judge imposed a term of imprisonment based on a higher guideline range than that which was calculated in the PSR—without explaining how he arrived at a higher range and in spite of his statement that he was proceeding to sentencing based on the PSR's calculations. Although the record reveals that the sentencing judge believed Johnson's criminal history category was under-represented, it is unclear as to how that finding was used to calculate Johnson's sentence. Because the record does not reveal an adequate explanation of the chosen sentence, Johnson's sentence must be reversed.

Second, Johnson claims the district court committed a substantive error by imposing Johnson's sentence consecutively to an undischarged term of imprisonment from a sentence imposed by another judge in another case. However, the record does not reflect that Johnson specifically requested a concurrent sentence or objected to a consecutive sentence at any time before or after the sentencing judge announced that Johnson's sentences would run consecutively. Indeed, Johnson's attorney conceded at oral argument that the plain-error standard "would probably apply in this case." Thus, we review only for plain error. *See United States v. Brassell*, 49 F.3d

274, 277 (7th Cir. 1995) ("Because [defendant] made no objection at the time of sentencing, review is limited to the standard of plain error."). Only if the error both is clear and obvious and affected the outcome of the court proceedings should the sentence be disturbed. *United States v. Olano*, 507 U.S. 725, 732-36 (1993).

Here, there is no plain error in the district court's decision to sentence Johnson to a term of imprisonment that would run consecutively to the undischarged term he was serving based on the revocation of his supervised release. When a defendant was on supervised release at the time he committed the offense and his supervised release is revoked, the Guidelines provide that "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c) & Application Note 3(C); *see also United States v. Jackson*, 546 F.3d 465, 469 (7th Cir. 2008). The Sentencing Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation. U.S.S.G. § 5G1.3, Application Note 3(C).

In imposing Johnson's sentence, the judge stated, "Mr. Lipscomb [the Assistant United States Attorney] indicated that the sentence was probably on the light side, and he was correct. So the Court is going to impose a sentence of 96 months, but it's going to be consecutive to case 02-CR-128. That's the decision that Judge Charles Clevert entered on the revocation." (Sentencing Tr. 24:1-5.)

The district court acted within its discretion and followed the recommendation set forth in the Guidelines. A consecutive sentence was not an abuse of discretion.

Johnson's final argument on appeal is that the district court erred by failing to ask Johnson whether he had read the PSR. Federal Rule of Criminal Procedure 32 provides that the sentencing court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A); *see also United States v. Rone*, 743 F.2d 1169, 1174 (7th Cir. 1984) (*Rone*) ("The district court at the sentencing hearing need directly ask the defendant only three questions—whether he or she has had an opportunity to read the report, whether the defendant and defense counsel have discussed the report and whether the defendant wishes to challenge any facts in the report.").

The sentencing transcript reveals that the district court did not ask the defendant whether he read the PSR. But it does reveal that the defendant had read it. During his statement in allocution, Johnson stated, "But in the presentence report, every time she—Probation Department lady—every time she address the issue that I had with authority, she pointed out one thing that I believe was factual. The other, I looked at it as wow, she's painting a cruel picture of me here. But the thing she pointed out that was the truth was the fact that I don't like the Police." (Sentencing Tr. 15:1-7.)

Thus, any error regarding the court's failure to comply with Federal Rule of Criminal Procedure 32 was harmless.

## CONCLUSION

For the reasons discussed above, Johnson must be resentenced. Johnson requests that we apply Circuit Rule 36 on remand and re-assign the case to another judge. The request is denied. The sentencing judge presided over Johnson's criminal trial. Here, where the PSR recommends an enhancement for perjury based on trial testimony, the trial judge is uniquely qualified to determine the appropriate sentence.

Johnson's sentence is therefore VACATED and REMANDED for resentencing consistent with this opinion.