**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 10, 2011
Decided September 19, 2011

**Before**

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID R. HERNDON, *District Judge*[*]

No. 10-2620

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 08 CR 00139 |
| EDWARD EASON, *Defendant-Appellant.* | Ronald A. Guzman, *Judge.* |

**O R D E R**

Shortly after his release from jail, Edward Eason went on a bank robbery spree and confessed after he was caught. He filed a motion to suppress his confession, lost the motion, and pled guilty. On appeal, Eason challenges his 160-month sentence. Although he maintains he should not have received an obstruction of justice enhancement, the district court did not err in concluding that his suppression hearing testimony was false, on a material matter, and willfully made. In addition, because he had many convictions unaccounted for in his criminal history category under the sentencing guidelines, the judge did not err in finding that criminal

---

[*]Of the United States District Court for the Southern District of Illinois, sitting by designation.

history category III under-represented Eason's criminal history. Finally, we do not find the 160-month sentence unreasonable. Therefore, we affirm the judgment of the district court.

## I.  BACKGROUND

Edward Eason pled guilty to committing five different bank robberies in 2007 and early 2008. During each robbery, he handed over a note threatening to shoot the teller if the teller did not give Eason the money he demanded. It turns out that Eason did not have a gun with him during any of the five robberies, but none of the tellers knew it. Eason left the banks with approximately $700 on one occasion, $12,200 on another, and around $3,000 in each of the three other robberies.

Eason filed a motion to suppress the confession he gave after his arrest. He contended that he agreed to give a statement only after law enforcement agents threatened to arrest his girlfriend and sister if he did not cooperate. Two government agents testified at the suppression hearing that Eason spoke after receiving *Miranda* warnings and signing a written *Miranda* waiver. They also testified that the questioning stopped after he invoked his right to counsel and only resumed after Eason signed a second *Miranda* waiver stating he had previously invoked his right to counsel, changed his mind, and wished to speak with investigators without an attorney present. The waiver also stated that Eason had made the decision freely and without threats or promises. The agents also testified that they never threatened to arrest Eason's girlfriend or sister if he did not sign the form or speak with them.

Eason submitted a sworn affidavit in support of his motion to suppress. The affidavit states, among other things, that law enforcement agents interviewed him at FBI headquarters and that the interview stopped after he invoked his right to counsel. However, at the suppression hearing, Eason testified that the agents interviewed him at his workplace right after his arrest. He also testified at the hearing that the agents temporarily stopped his interrogation after he invoked his right to counsel but that they resumed again after about fifteen to twenty minutes. The prosecutor confronted Eason with his sworn affidavit on cross examination. While the prosecutor was attempting to impeach him, Eason affirmatively stated, though not in response to a particular question, that he had never seen the affidavit before.

The district court denied Eason's motion to suppress, stating Eason's testimony was difficult to believe and that the sequence of events he detailed in certain instances did not make sense. Eason pled guilty, and the Presentence Investigation Report recommended a sentence of 87-108 months' imprisonment based on an offense level of 27 and a criminal history category of III.

The government requested a two-point obstruction of justice enhancement based on Eason's testimony at the suppression hearing, and the district court agreed. It also awarded Eason an acceptance of responsibility reduction. The government also argued that criminal history category VI, the highest category, more accurately reflected Eason's criminal history

than did the guidelines recommendation of category III. The district court concluded that criminal history category V was appropriate, and the advisory guidelines range for the final offense level of 29 combined with a criminal history category of V was 140 to 175 months' imprisonment. The district court sentenced Eason to 160 months, and he appeals his sentence.

## II. ANALYSIS

### A. Obstruction of Justice Enhancement

Eason first challenges the obstruction of justice enhancement he received. U.S.S.G. § 3C1.1 provides for a two-level enhancement for a defendant who "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." The Supreme Court has held that the enhancement is warranted when a defendant willfully provides untruthful testimony, under oath, on a material matter. *United States v. Dunnigan,* 507 U.S. 87, 98 (1993). A district also must review the evidence and make independent findings supporting the enhancement. *Id.* at 95.

The district court imposed the enhancement after concluding that Eason testified untruthfully about whether he had read the affidavit he signed. The court stated at the sentencing hearing that it believed Eason's testimony that he had not seen the affidavit was "just a total disrespect for the entire process that we were undergoing . . . . I think he committed perjury when he said that. In fact, I'm sure of it."

The obstruction of justice enhancement "is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1 cmt. 2. Therefore, when considering whether to apply § 3C1.1, "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." *Id.* That Eason testified at a suppression hearing where the judge ultimately denied the motion is therefore not sufficient in itself to support the enhancement, and the district court recognized this. *Cf. Dunnigan,* 507 U.S. at 95 (explaining that even if a defendant's testimony is truthful, a jury might still find it insufficient to excuse criminal liability).

Eason maintains that his statement was neither material nor willful. The guidelines define "material" to mean "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6. Eason's statement that he had not read the affidavit was material. When the government attempted to impeach him by pointing out that he had testified to facts during the hearing that were not in the affidavit, he denied having seen the affidavit. The resolution of the suppression motion depended largely on whether the court believed Eason's testimony, as Eason maintained the agents had threatened to arrest his girlfriend and sister if he did not cooperate, while the agents denied making such threats. If Eason's testimony about not seeing the affidavit had been

believed, it would have bolstered his credibility as a witness and deflected the prosecution's impeachment. Ultimately, if the court believed Eason's testimony at the suppression hearing, it might have suppressed his confession. *See United States v. Vallar*, 635 F.3d 271, 289 (7th Cir. 2011). Eason's statement was likely to influence the outcome as it affected his credibility, and it was material. *See United States v. Galbraith*, 200 F.3d 1006, 1014 (7th Cir. 2000) ("[A] falsehood told at a pretrial hearing is material if it is calculated to substantially affect the issue under determination at that hearing.").

It was also not clear error to conclude that Eason willfully and falsely testified. A district court's determination that a defendant was willfully untruthful in making a statement is a finding of fact that we review only for clear error, giving deference to a district court's credibility determinations. *United States v. DeLeon*, 603 F.3d 397, 403 (7th Cir. 2010). Although Eason maintains that his testimony was simply a mistake and resulted from a misunderstanding, the district court listened to Eason's testimony and concluded it lacked credibility. Specifically, the district court stated, "I don't for a minute believe that his lawyer didn't give [the affidavit] to him and make him read it. I believe that's just a total disrespect for the entire process . . . I think he committed perjury when he said that."

We find no clear error in that determination. *See Vallar*, 635 F.3d at 289 (finding no clear error in conclusion that defendant willfully testified falsely where district court weighed defendant's testimony against that of the government agents and concluded defendant lacked credibility). Eason had signed the affidavit before it was submitted to the court. Also, he only stated he had not seen the affidavit after the prosecutor confronted him with details about his testimony that were not in his affidavit. Prior to that, he had been asked, "And in your affidavit, you state that after your arrest, the law enforcement officials interrogated you at the FBI office?" and to that question he answered, "Correct," with no suggestion that he had not seen the affidavit. The district court's explanation for why it imposed the obstruction enhancement was sufficient to satisfy *Dunnigan*, and it was justified.

## B. Criminal History

Eason also challenges the district court's decision to increase his criminal history category from category III to category V after it concluded that Eason's criminal history was underrepresented. U.S.S.G. § 4A1.3(a)(1) provides that an upward departure based on inadequacy of criminal history may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Because the guidelines are now advisory, the sentencing judge is not required to follow section 4A1.3 when imposing an above-guideline sentence. *United States v. Johnson*, 612 F.3d 889, 896 (7th Cir. 2010). But "[a]lthough not bound by the Guidelines, district courts may apply the departure guidelines 'by way of analogy in analyzing the section 3553(a) factors.'" *Id.* (quoting

*United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007)); *see also United States v. LaFaive*, 618 F.3d 613, 619 (7th Cir. 2010).

Both parties agree that the PSR accurately calculated Eason's criminal history category under the guidelines as category III. The PSR also noted that an upward variance might be warranted if the court found that category III substantially under-represented the seriousness of Eason's criminal history or the likelihood he would commit future crimes, and, indeed that is what the government argued. Eason had ten criminal convictions before the five burglaries in this case, spanning a twenty-year period. He had been convicted of theft, robbery, burglary (twice), attempting to receive stolen property, larceny, armed robbery (twice), escape, and bank robbery. He received three criminal history points for a 1989 bank robbery conviction for which he received an eighteen-year sentence, but, because of their ages, the guidelines did not assess criminal history points for the nine other convictions. Had those older convictions counted, they would have resulted in twenty-five additional criminal history points. The government asked that the court treat Eason as though he were in category VI, which applies to defendants with thirteen or more criminal history points.

The district court concluded that criminal history category III under-represented Eason's criminal history and likelihood of committing future crimes and sentenced him in accordance with criminal history category V. Although Eason argues otherwise, the sentencing judge gave more than sufficient reasons for doing so. At the hearing, the district court stated:

> This record, I find, is clearly under represented by a criminal history category III. It includes long periods of incarceration, substantial periods of incarceration, sentences of incarceration for which no criminal history points were awarded, namely the robbery in 1968, the burglary in 1975, the burglary – second burglary in 1975, the receiving stolen property in 1979, larceny in 1981, the armed robbery in 1982 . . . the second armed robbery, as well as the escape from prison in 1986.

> But even more than simply a failure to reflect the seriousness of his past conduct, what this record reflects clearly is that the defendant will continue to commit violent crimes whenever he is free and amongst the rest of us. He has done so at every single opportunity since the time that he was 16 years of age, and numerous periods of incarceration have failed to deter him from doing so.

> The public is entitled to be protected from that kind of determined insistence on committing crimes, each of which has one or more victims. So I am going to depart. I'm going to sentence the defendant at a total offense level of 29 and as if his criminal history category was V.

The district court elaborated even more in its Statement of Reasons, explaining that it concluded Eason to be a recidivist likely to engage again in serious criminal conduct and that

public safety required a longer period of incarceration than that called for by a category III criminal history guideline calculation.

The reasons the district court gave were justified. As the prosecutor pointed out, Eason was let out of jail in April of 2007 after serving an eighteen-year sentence for bank robbery. By that November, he had already embarked on the bank robbery spree that led to the convictions in this case. If Eason's older convictions had counted in the criminal history computation, he would have twenty-five additional criminal history points, nearly double the number necessary to place him in category VI, the highest category in the guidelines. In light of the number and kind of Eason's convictions, and the lack of deterrent effect incarceration had on him, calculating Eason's criminal history based on a criminal history category of V was justified in this case.

Finally, the 160-month sentence Eason received was substantively reasonable. The sentencing judge applied the 18 U.S.C. § 3553(a) factors, explained its reasons, and an above-guidelines sentence was reasonable in this case in light of Eason's prior convictions. *See United States v. Ellis*, 622 F.3d 784, 800 (7th Cir. 2010).

### III. CONCLUSION

The judgment of the district court is AFFIRMED.