**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 4, 2022
Decided October 31, 2022

**Before**

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 22-1053

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 21-cr-47 |
| MAURICE CURTIS *Defendant-Appellant.* | Brett H. Ludwig, *Judge.* |

**O R D E R**

A jury found Maurice Curtis guilty of a federal gun possession charge following a trial in which he testified in his own defense. The district court then sentenced him to 77 months' imprisonment, the low end of the Sentencing Guidelines advisory range. In calculating that range, the district court increased Curtis's offense level two levels after finding that Curtis testified falsely, and thereby obstructed justice. Seeing no error in the district court's finding, we affirm.

**I**

**A**

One evening in September 2019, four Milwaukee police officers observed a group of men playing a sidewalk dice game. One officer became suspicious when, as body-camera footage later corroborated, he saw Curtis "quickly stand up and immediately begin to walk away from the group towards a garbage can" as the police arrived. Each officer testified to observing Curtis touch his waistband while behind the garbage can. One officer added that he saw Curtis "lift up his shirt and retrieve a black square object from his front waistband and then drop that black square object onto the grass." Another officer "made a straight line toward the garbage can" and, as he expected, found a loaded gun on the ground behind the can. A forensic analyst later found that DNA on the recovered gun matched Curtis's DNA.

Curtis testified in his own defense. He told the jury that he did not have a gun during the dice game and that the true owner of the firearm found by the police "had to be one of the [other] fellahs" gambling on the sidewalk. Curtis testified that when police arrived, he was already walking toward the garbage can, "on [his] way to urinate," but he "turned back around" and "came back towards the crowd" after seeing the police. He stated that, like him, many of the men urinated by the garbage can throughout the night. He added that there were "two other people coming from the area" behind the trash when police arrived. For their part, the police officers denied smelling urine anywhere around the garbage can.

In no uncertain terms, Curtis denied placing anything behind the garbage can. He denied reaching into his waistband and stated that the only objects in his hand were his cell phone and some money. When asked whether the gun was his, Curtis responded: "No, not at all." He insisted he never touched the gun.

The jury found Curtis guilty, and the case proceeded to sentencing. The probation officer submitted a presentence investigation report that calculated a guidelines range of 77 to 96 months' imprisonment, based on an offense level of 22 and a criminal history category of V. The offense level determination included a two-level adjustment pursuant to U.S.S.G. § 3C1.1 for obstruction of justice, which the probation officer recommended after determining that Curtis deliberately gave false testimony at trial. This false testimony entailed denying possessing the gun found by the police and concocting a false story about why he walked toward the garbage can as the officers arrived.

Curtis objected to the proposed obstruction-of-justice adjustment. He countered that he only denied possessing the gun during the dice game and that the DNA evidence did not prove conclusively that he possessed the gun. He also argued that although he "may have been mistaken about the exact time at which he went to the garbage," such a mistake did not constitute willful, false testimony. Curtis further urged that the obstruction adjustment implicates his constitutional right to testify in his own defense and therefore requires more than a guilty verdict for the adjustment to be applied.

B

The district court overruled Curtis's objection, determined the advisory range to be 77 to 96 months, and imposed a sentence of 77 months. As for the obstruction-of-justice adjustment, the district court found that Curtis's "description of the circumstance[s]" when police arrived was "inconsistent with the video evidence." The district court further found that Curtis provided materially false statements when he categorically and unequivocally denied ever possessing or stashing the gun. The court also found that Curtis's contention that the gun belonged to "one of the fellahs" was "false and inconsistent with the jury's verdict." In the end, the district court concluded that Curtis attempted "to impede justice by providing false testimony and misleading the jury about his possession of the gun…in an attempt to evade responsibility." Finally, the district court explained that it would have imposed the same sentence with or without the obstruction adjustment.

Curtis now appeals his sentence.

II

The sole issue before us is whether the district court's factual findings underlying the obstruction-of-justice adjustment were clearly erroneous. See *United States v. Bowling*, 952 F.3d 861, 869 (7th Cir. 2020) (upholding the district court's factual findings as long as they are "plausible in the light of the record in its entirety" (quoting *United States v. DeLeon*, 603 F.3d 397, 402 (7th Cir. 2010)). We see no error.

A

Section 3C1.1 of the Sentencing Guidelines instructs district courts to increase the offense level when the defendant obstructs his prosecution, and the "obstructive conduct [is] related to" the offense. That conduct includes perjury. U.S.S.G. § 3C1.1

Comment 4(b). But, as Curtis emphasizes, the adjustment does not apply simply because a defendant chooses to testify and the trial ends in a conviction. *United States v. Johnson*, 612 F.3d 889, 895 (7th Cir. 2010). To the contrary, the district court must assess the defendant's testimony and find that the defendant willfully provided false and material testimony. See *id.* at 893. Put simply, the district court must independently conclude "that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt." *Id.* (quoting *United States v. White*, 240 F.3d 656, 662 (7th Cir. 2001)); see also *United States v. Stenson*, 741 F.3d 827, 830 (7th Cir. 2014).

B

The district court's finding satisfies this standard. After considering the evidence and hearing argument from both sides, the court determined that Curtis "attempt[ed] to evade responsibility" "by providing false testimony" on a material fact: his possession of the gun. The district court rooted this finding in the officers' testimony, the DNA evidence, and the body-camera footage—deeming that evidence more credible than Curtis's flat denial of ever touching or discarding the gun.

First, the district court reasonably found that Curtis's testimony about when he walked to the garbage can was false. Specifically, Curtis's statement that he left the group on the sidewalk *before* noticing the arrival of police officers was "inconsistent with the video evidence." The body-camera footage, the district court observed, showed Curtis walk to the garbage can and then back to the sidewalk *after* the police arrived and turned on their flashlights.

Next, the district court reasonably found that Curtis falsely denied possessing the gun and discarding it behind the trash can. Curtis insists that he testified only that he did not possess the gun *during the dice game*. But that position is irreconcilable with his unequivocal denial of ever possessing the gun or putting it behind the trash can. Remember, too, that the officers testified that they not only observed Curtis place something behind the garbage can, but also then found Curtis's DNA on the gun. In short, all of this evidence supports the district court's conclusion that Curtis presented false testimony on a material issue to avoid culpability.

Contrary to Curtis's contention, at no point did the district court place a burden on his constitutional right to testify. The choice to testify was Curtis's and Curtis's alone. His false testimony exposed him to the very sentence adjustment imposed by the court in determining the advisory range. Nowhere did the district court suggest that Curtis committed perjury merely because the jury found him guilty after he testified.

Even more, there is no constitutional right to testify falsely under oath. *Stenson*, 741 F.3d at 830–31.

 For these reasons, we AFFIRM.