# In the

# United States Court of Appeals

## For the Seventh Circuit

—————

No. 02-4162

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM KING,

*Defendant-Appellant.*

—————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 CR 40021—**J. Phil Gilbert**, *Judge.*

—————

ARGUED APRIL 11, 2003—DECIDED AUGUST 4, 2003

—————

Before EASTERBROOK, MANION, and DIANE P. WOOD,
*Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Two legs clothed in
prison garb poking out from behind a roadside sign: that is
what an off-duty corrections officer saw while driving down
a road approximately two miles from the Federal Prison
Camp at Marion, Illinois. Turning around for a second look,
the officer noted William King in an inmate's uniform walk-
ing along the side of the road heading away from the camp.
The officer confronted King and after a brief discussion
convinced him to accept a ride back to the camp. Upon his
return to the camp, authorities transferred King to a
nearby county jail and, after some delays, indicted King on

one count of escape in violation of 18 U.S.C. § 751(a). A jury convicted King, and the district court sentenced him to 30 months' imprisonment, to be served consecutively to the sentence for which King was already serving time. King now challenges both his indictment and sentence. Finding no error, we affirm the district court in all respects.

## I

King was incarcerated in a minimum security prison "camp" operated by the Federal Bureau of Prisons (BOP) that houses, among others, smalltime crack dealers like King. On December 14, 2001, King wandered off, scaling the modest three-foot fences that set the camp off from surrounding private property and disregarding the conspicuously placed signs that ring the institution and warn inmates not to stray beyond a designated perimeter. King had been gone for some seven hours and was walking away from the camp on a road approximately two miles away when Correctional Officer Tim Rodgers, who was off-duty at the time and driving his truck on personal business, noticed him. King initially tried to hide behind a sign, but Rodgers, after a second pass, pulled up beside him and asked him if he needed a ride. King initially accepted the offer and moved to enter the vehicle, but then he noticed Rodgers's uniform. At that point, Rodgers informed King that the jig was up: King had the choice of trying to run and almost certainly being caught by U.S. marshals, or he could get into the truck and be transported back to the camp. King sensibly chose the latter option.

Upon his return, King was transferred to Williamson County Jail. However, the BOP did not initiate any administrative action against King. Instead, it simply notified the U.S. Marshals Service (the Marshals) of what had transpired and sent written notification to someone in the Central District of Illinois (presumably to that U.S. Attor-

ney's Office, as it had been responsible for prosecuting King's original case). No one took any action until late January 2002, when the Marshals interviewed King and obtained his side of the story: that he had gone into the woods to pray and got lost. In early February 2002, the BOP and the Marshals briefly disputed who would shoulder the costs of King's incarceration at the Williamson County Jail. The Marshals Service claimed that it had not received word of King's transfer to Williamson until February 2002, and thus should not be responsible for the costs prior to that date. In the end, however, the Marshals agreed to pay. Two months later, on April 3, 2002, King was indicted on one count of escape in violation of 18 U.S.C. § 751(a).

At arraignment on the escape charge, King raised a number of objections, including an alleged violation of his right to prompt presentment before a magistrate for a probable cause hearing and his right to a speedy trial. Later, he filed a motion to dismiss his indictment on those grounds; the district court denied that motion on July 9, 2002. King proceeded to trial, hewing throughout to his story that he had walked into the woods in order to "find God" and had become lost. The jury found this too much to swallow and returned a guilty verdict. King's sentence of 30 months' imprisonment, which the court imposed on November 26, 2002, was based on a Sentencing Guidelines calculation reflecting an upward adjustment under U.S.S.G. § 3C1.1 for King's perjurious testimony and the court's rejection of a seven-point reduction for "voluntary return" under U.S.S.G. § 2P1.1(b)(2). King now appeals.

## II

King presents three arguments for our consideration. The first of these is a renewal of his presentment and speedy trial claims. King argues that his incarceration in the Williamson County Jail for nearly four months prior to his

indictment under 18 U.S.C. § 751(a) was a violation of his rights under the Speedy Trial Act, 18 U.S.C. § 3161, and the Sixth Amendment. We review legal questions regarding application of the Speedy Trial Act *de novo,* but factual findings are reviewed for clear error. *United States v. Salerno,* 108 F.3d 730, 734 (7th Cir. 1997). Our review of King's Sixth Amendment speedy-trial claims is governed by the framework set forth in *Doggett v. United States,* 505 U.S. 647, 651-52 (1992).

In the usual case, the Speedy Trial Act requires that the charge in the original complaint "be dismissed or otherwise dropped," 18 U.S.C. § 3162(a)(1), if the period between the date of an arrest and the return of an indictment exceeds 30 days, 18 U.S.C. § 3161(b). We have held, however, that the Act does not apply to the recapture of an escaped prisoner because her apprehension does not initiate new restraints beyond those to which she is subject as a result of her original conviction. *United States v. Zukowski,* 851 F.2d 174, 177 (7th Cir. 1988); see also *United States v. Sairafi,* 801 F.2d 691, 692 (4th Cir. 1986); *United States v. Stead,* 745 F.2d 1170, 1172-73 (8th Cir. 1984). Other decisions hold that the dismissal sanction of § 3162(a)(1) applies where a suspect can make one of two showings: that she was formally charged at the time of or following her arrest but no indictment was returned within 30 days, or she was subject to some additional continuing restraint imposed in connection with the charge on which she is eventually tried. *United States v. Hoslett,* 998 F.2d 648, 652 (9th Cir. 1993); *United States v. Gonzalez-Sandoval,* 894 F.2d 1043, 1049 (9th Cir. 1990); *United States v. Candelaria,* 704 F.2d 1129, 1131 (9th Cir. 1983). Under either of these approaches, because King was not formally charged with escape until April 3, nor was he subject to any additional restraints beyond the sentence that had already been imposed as part of his prior conviction, his claim is a nonstarter.

King makes only one argument in response: that the dispute between BOP and the Marshals about who should foot the bill for his incarceration at the Williamson County Jail creates an inference that he was really transferred to the jail to prosecute the escape attempt, rendering the transfer an arrest within the meaning of the Act. But this bureaucratic dispute does not have the substantive implications King claims for it. First, by its very terms, the Act's mandatory dismissal sanction is available only "in the case of [an] individual *against whom a complaint is filed* charging such individual with an offense. . . ." 18 U.S.C. § 3162(a)(1) (emphasis added); *Candelaria*, 704 F.2d at 1131. Thus, an inference that the Marshals thought that King was going to be charged with the escape offense, because they were paying Williamson County for the costs of his incarceration, is simply not justified. (The Marshals Service in any event is not the part of the Justice Department with the authority to charge anyone with a crime; that job belongs to the U.S. Attorneys or the litigating sections of the Department.) *Cf. Zukowski*, 851 F.2d at 177 (rejecting defendant's argument that the filing of a "Notice of Escaped Federal Prisoner" authorized or otherwise amounted to an arrest within the meaning of the Speedy Trial Act). Second, we decline the invitation to attach talismanic significance to the Marshals' ultimate willingness to bear the costs of King's incarceration at a more secure facility. Under 18 U.S.C. § 3621(b), the BOP is authorized to house a prisoner like King anywhere it deems appropriate. The statute is silent on the question of who must shoulder the costs, except for a clause that okays use of a facility "whether maintained by the Federal Government or otherwise." *Id.* Here, BOP easily might have concluded that King had forfeited the right to live in an open facility, given his demonstrated willingness to leave the premises, which meant that he had to be moved first temporarily and then permanently to a more secure place.

Moving on, King's Sixth Amendment claim suffers from two fatal flaws. First, it is well settled that the Sixth Amendment right to a speedy trial has no application prior to arrest or indictment. *Doggett*, 505 U.S. at 654-55; *United States v. MacDonald*, 456 U.S. 1, 6-7 (1982); *United States v. Wallace*, 326 F.3d 881, 885 (7th Cir. 2003); *United States v. Koller*, 956 F.2d 1408, 1413 (7th Cir. 1992); *Zukowski*, 851 F.2d at 178. Protections against preindictment delay are more properly handled under the Due Process Clause of the Fifth Amendment. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *MacDonald*, 456 U.S. at 7; *Wallace*, 326 F.3d at 886. In King's case, a formal indictment was not entered until April 3, 2002. King can prevail only if he can show that his return to the camp and transfer to the Williamson County Jail constituted an arrest. This he cannot do, for the same reasons we have already noted with respect to King's claims under the Speedy Trial Act. Once again, *Zukowski* is dispositive, for that case rejected the argument that the apprehension of an escaped prisoner could constitute an arrest for Sixth Amendment purposes. 851 F.2d at 178. Thus, no Sixth Amendment rights could have attached in this case until the filing of an indictment on the escape charge.

Even if King's apprehension could somehow be characterized as an arrest for Sixth Amendment purposes, King cannot show that his Sixth Amendment speedy-trial rights were infringed. In order to do so, he would have to prove four things: (1) that the delay was uncommonly long; (2) that the government is more to blame for the delay than the defendant; (3) that the defendant asserted his right to a speedy trial; and (4) that he suffered prejudice as a result of the delay. *Doggett*, 505 U.S. at 651. But, just to take an example, King cannot show that he was prejudiced by the delay, because in order to do so he would have to prove that his detention at the Williamson County Jail was "more onerous and restrictive" than at the camp. But, as we have already noted, the BOP is authorized under 18 U.S.C.

§ 3621(b) to house King in any facility it deems appropriate based on his original drug conviction.

King next turns his attention to his sentence, challenging the district court's decision not to award a seven-point reduction in his offense level for voluntary return pursuant to U.S.S.G. § 2P1.1(b)(2). That Guideline establishes a base offense level of 13, but it permits a seven-point reduction to a defendant who: (1) escapes from "non-secure custody," and (2) "return[s] voluntarily within ninety-six hours," so long as (3) she does not commit any "federal, state, or local offense punishable by a term of imprisonment of one year or more." U.S.S.G. § 2P1.1(b)(2) & comment (n.2). The district court noted that King tried to hide behind a sign and appeared to accept a ride away from the camp before he became aware that the driver of the truck was a correctional officer. This, the court found, was inconsistent with "voluntary return" as required by § 2P1.1. We review *de novo* the district court's interpretation of the Sentencing Guidelines, and review the court's findings of fact for clear error. *United States v. Romero*, 189 F.3d 576, 589 (7th Cir. 1999).

King thinks that the district court clearly erred by refusing to interpret this sequence of events with emphasis on his willingness to get into Rodgers's truck and return to the camp. We disagree, and not just because the standard of review is a deferential one here. It was only after Rodgers warned King that King could either return with Rodgers to the camp or be chased down by U.S. marshals that King became cooperative. *United States v. Pynes*, 5 F.3d 1139, 1140-41 (8th Cir. 1993) (refusing to find voluntary return where a prison escapee surrendered only when he saw deputy marshals crossing the street to apprehend him). It was therefore eminently reasonable for the district court to conclude that King's "willingness" to cooperate was not the type that § 2P1.1(b)(2) had in mind.

We turn finally to King's challenge to the district court's decision to impose a two-point enhancement for perjury under U.S.S.G. § 3C1.1. An enhancement under § 3C1.1 may be imposed only if the court finds that the defendant willfully obstructed or impeded the investigation, prosecution, or sentencing by way of conduct related to the defendant's offense of conviction or a closely related offense. Perjury is specifically listed as one possible means of obstruction, U.S.S.G. § 3C1.1, comment (n.4). It is defined for enhancement purposes (and under the federal perjury statute, 18 U.S.C. § 1621) as giving under oath a materially false statement willfully, rather than as a result of confusion, mistake, or faulty memory. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) . We review the adequacy of the district court's perjury findings *de novo* and any accompanying factual findings for clear error. *United States v. Freitag*, 230 F.3d 1019, 1025 (7th Cir. 2000).

At sentencing, the district court focused on King's testimony about his intention in straying beyond the perimeter of the camp. The district court noted the discrepancy between King's behavior as described by Rodgers and King's testimony at trial that he had wandered into the woods to pray and gotten lost but had every intention of returning. In finding the enhancement applicable, the court made the following statement:

> This defendant was caught. You know, he can get up on the witness stand and say that his intentions were to return, but his actions did not coincide with what his claimed intentions were. His actions were just the opposite.
>
> ****
>
> [T]he Court heard the testimony. The Court heard the witness testify. The defendant testified and the Court believes that the defendant is not telling the truth when he was testifying.

>I don't believe for a minute this defendant was lost like he claimed he was at trial. I think he was intending to escape, intending to leave. From his actions, from the testimony of the officer as to—and the Court believes the officer when he said that the defendant asked him for a ride. There was no reason for the officer not to be telling the truth. And, again, the fact that this defendant had walked away. He was walking in the opposite direction of the penitentiary. He saw this car go back a couple times, and he wasn't probably sure who it was, and he was hiding behind the sign as even he admits himself. And the Court does not believe the defendant's testimony at trial. And that is under 3C1.1, obstruction or impeding the administration of justice. And the Court feels the two point enhancement is warranted.

King challenges the district court's perjury enhancement from two angles. He first notes that the district court failed to make formal findings as to each element of perjury. But the Supreme Court has held that the "independent finding requirement" is not an exacting one, so long as the district court makes a finding "that encompasses all of the factual predicates for a finding of perjury." *Dunnigan*, 507 U.S. at 95; see also *United States v. White*, 240 F.3d 656, 662 (7th Cir. 2001); *United States v. Hickok*, 77 F.3d 992, 1008 (7th Cir. 1996). As a result, a district court's imposition of an enhancement can withstand scrutiny where the court determines that the defendant "lied to the judge and jury about matters crucial to the question of the defendant's guilt," *White*, 240 F.3d at 662, or is otherwise satisfied that testimony was "intentionally given, false, and material," *Freitag*, 230 F.3d at 1026.

The district court's statement from the bench meets that standard. The district court clearly identified which parts of King's testimony it considered to be lies. Compare *United States v. Gage*, 183 F.3d 711, 715 (7th Cir. 1999), with

*United States v. McGiffen*, 267 F.3d 581, 591-92 (7th Cir. 2001). There is also no doubt about why the court thought that the lies were material and reflected a specific intent to obstruct justice, since King's intent in straying beyond the perimeter of the Camp was the only disputed point at trial. This is enough to comply with *Dunnigan*'s command to conduct a review of the evidence and make independent findings, and is also sufficient for us to "discharg[e] our appellate responsibility to determine whether the court's findings are clearly erroneous." *McGiffen*, 267 F.3d at 592 (citing *United States v. Ledezma*, 26 F.3d 636, 645 (6th Cir. 1994)).

Last, King asserts that the evidence was insufficient to support a finding of perjury. But once again, we see no error in the district court's assessment of the facts, clear or otherwise. Even though not every instance of false testimony warrants enhancement under § 3C1.1, see *Dunnigan*, 507 U.S. at 94-95; *McGiffen*, 267 F.3d at 591; *United States v. Seward*, 272 F.3d 831, 838 (7th Cir. 2001), the district court's view of the situation was supported by the specific facts that we have already recounted: King's attempt to hide, his evasive behavior, his location, and his rapid change of behavior once he learned where Rodgers worked.

### III

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                _____
                *Clerk of the United States Court of Appeals for the Seventh Circuit*