**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

CHRISTOPHER THOMAS BLANDIN,
            *Defendant-Appellant.*

No. 05-10316

D.C. No.
CR 04-0463 KJD

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Submitted January 13, 2006*
San Francisco, California

Filed February 1, 2006

Before: John T. Noonan, A. Wallace Tashima, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Tashima

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

1257

## COUNSEL

Arthur L. Allen, Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellant.

Christina M. Brown, Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

## OPINION

TASHIMA, Circuit Judge:

Christopher Thomas Blandin ("Blandin") appeals the sentence imposed by the district court following his guilty plea for escaping from a non-secure halfway house in violation of 18 U.S.C. § 751(a). Blandin argues that the district court erred by denying him a seven-level reduction for voluntary return under U.S.S.G. § 2P1.1(b)(2) because he had formed the subjective intent to return to custody prior to his arrest. Blandin further argues that the district court erred by relying upon "testimonial hearsay" contained in his Pre-Sentence Investigation Report ("PSR") in violation of his Sixth Amendment right to confrontation.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We conclude that Blandin does not qualify for a sentencing reduction under § 2P1.1(b)(2) because he only returned to custody after he was arrested for trespassing. We further conclude that because Blandin's arrest for trespassing precludes a downward adjustment under § 2P1.1(b)(2), any alleged "testimonial hearsay" error was harmless.

## BACKGROUND

Blandin was a resident of Clark Center, a non-secure half-way house located in Las Vegas, Nevada. In October 2004, Blandin left the center for a job interview. While away, Blandin consumed alcohol in violation of the center's rules. Upon his return, Blandin failed an alcohol breath test and realized that his violation would require him to serve additional jail time. Rather than comply, Blandin chose to escape from Clark Center, reasoning that if he was going to be sent back to jail, he wanted to at least "get some enjoyment out of the process."

Three days after his escape, a local business owner discovered Blandin trespassing on his private property and called the police. Blandin claims that he voluntarily waited for officers to arrive and did not resist arrest. Although Blandin was arrested for trespassing, the trespass charge was dropped, and Blandin was instead charged with escape in violation of 18 U.S.C. § 751(a).[1] Blandin subsequently pleaded guilty. Blandin's PSR listed a base offense level of 13, and recommended a four-level reduction under U.S.S.G. § 2P1.1(b)(3) because Clark Center was a non-secure facility. The PSR also recommended a two-level reduction for acceptance of responsibility.

---

[1]In pertinent part, 18 U.S.C. § 751(a) reads:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or United States magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both.

At the sentencing hearing, Blandin argued that he was entitled to a seven-level reduction under § 2P1.1(b)(2), as opposed to the four-level reduction granted by the district court under § 2P1.1(b)(3), because he had voluntarily returned to custody within 96 hours.[2] Blandin contends that he had formed the subjective intent to return voluntarily to custody after only 24 hours, and that he was prevented from doing so because he was drugged by a prostitute. The district court denied the downward adjustment under § 2P1.1(b)(2). Blandin timely appealed.

## STANDARD OF REVIEW

We review the district court's interpretation of the Sentencing Guidelines *de novo*, and its factual findings in the sentencing phase for clear error. *United States v. Miguel*, 368 F.3d 1150, 1154-55 (9th Cir. 2004).

## DISCUSSION

I. *Downward Adjustment Under § 2P1.1(b)(2)*

**[1]** A seven-level downward adjustment under § 2P1.1(b)(2) is appropriate "[i]f the defendant escaped from non-secure custody and returned voluntarily within ninety-six hours." U.S.S.G. § 2P1.1(b)(2). Blandin argues that he qualifies for a downward adjustment under § 2P1.1(b)(2) because he intended to escape custody only for 24 hours, and he had formed the subjective intent voluntarily to return prior to his

---

[2]U.S.S.G. § 2P1.1(b)(2) provides:

> If the defendant escaped from non-secure custody and returned voluntarily within ninety-six hours, decrease the offense level under § 2P1.1(a)(1) by **7** levels or the offense level under § 2P1.1(a)(2) by **4** levels. *Provided*, however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more.

arrest. Blandin relies on *United States v. Novak*, 284 F.3d 986 (9th Cir. 2002), where we held that "[a]n escape begins when an inmate departs from lawful custody with the intent to evade detection." *Id.* at 990. From *Novak*, Blandin asks us to infer that an escape ends when the escapee forms the subjective intent to return to custody.

**[2]** The question of what constitutes "voluntary return" for purposes of § 2P1.1(b)(2) is an issue of first impression in this Circuit. In *United States v. Pynes*, 5 F.3d 1139 (8th Cir. 1993), the Eighth Circuit addressed the question of whether an escapee's subjective intent to return to custody could qualify for a downward adjustment under § 2P1.1(b)(2). Although the defendant in *Pynes* had already arranged for a ride to turn himself in when he was arrested by United States Marshals, the district court nonetheless denied him a downward adjustment under § 2P1.1(b)(2). *Id.* at 1140-41. The Eighth Circuit affirmed the district court, explaining that the defendant had not *voluntarily* turned himself in because he "surrendered only when he saw deputy marshals crossing the street to find and arrest him." *Id.* at 1141.

**[3]** Similarly, in *United States v. King*, 338 F.3d 794, 799 (7th Cir. 2003), the Seventh Circuit held that an inmate's "willingness" to cooperate with the arresting officer was insufficient to qualify for a downward adjustment under § 2P1.1(b)(2). There, the defendant had escaped from a non-secure facility and was attempting to hide behind a highway sign when he was spotted by an off-duty corrections officer. *Id.* at 796. The officer pulled over and offered the defendant a ride. *Id.* After initially accepting the offer, the defendant moved closer to the vehicle and realized that the driver was a corrections officer. *Id.* The officer informed the defendant that he "had the choice of trying to run and almost certainly being caught by U.S. marshals, or [getting] into the truck and be[ing] transported back to the camp." *Id.* Although the defendant chose voluntarily to return to the prison camp, the court held that the defendant's " 'willingness' to cooperate

was not the type that § 2P1.1(b)(2) had in mind," because he only chose to return when faced with the prospect of being arrested. *Id.* at 799.

[4] Like the defendants in *Pynes* and *King*, Blandin only surrendered when he was faced with the prospect of being arrested. Moreover, it is undisputed that Blandin did not voluntarily surrender as an escapee; Blandin admits that he was trespassing on private property at the time of his arrest. As the commentary to § 2P1.1 explains, " '[r]eturned voluntarily' includes voluntarily returning to the institution or turning one's self in to a law enforcement authority as an escapee (*not in connection with an arrest or other charges*)." U.S.S.G. § 2P1.1 cmt. n.2 (emphasis added). We agree with the reasoning of the Seventh and Eighth Circuits and hold that regardless of whether Blandin had formed the subjective intent voluntarily to surrender, his return to custody cannot be considered voluntary under § 2P1.1(b)(2) because his willingness to cooperate arose in connection with his arrest for trespassing. *See id.* cmt. n.2; *King*, 338 F.3d at 799; *Pynes*, 5 F.3d at 1141.[3]

## II.  *Testimonial Hearsay Contained in PSR*

Blandin argues that the district court erred by relying on a contested statement in his PSR when denying his request for a downward adjustment under § 2P1.1(b)(2).[4] According to Blandin, the statement was improper "testimonial hearsay" in violation of his Sixth Amendment right to confrontation as established by *Crawford v. Washington*, 541 U.S. 36 (2004).

---

[3] The fact that Blandin was not ultimately charged with trespassing is irrelevant because he admits to being arrested for trespass, which precludes a finding that he "returned voluntarily" under § 2P1.1(b)(2). *See* U.S.S.G. § 2P1.1 cmt. n.2 (explaining that a defendant must turn himself in "not in connection with an arrest or other charges").

[4] The contested statement reads: "Records of the U.S. Marshal s [sic] reflect that the defendant attempted to elude police officers," at the time of his arrest.

Blandin concedes, however, that he failed to raise a Confrontation Clause claim before the district court; therefore, we can reverse only if we find plain error affecting Blandin's substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

**[5]** Under *Olano*, Blandin bears the burden of showing that any alleged error was prejudicial. *Id.* at 734. Blandin cannot carry this burden, however, because any alleged error arising from the district court's consideration of the contested statement was harmless. Even if Blandin had cooperated with the arresting officers, he nonetheless would have failed to qualify for a downward adjustment under § 2P1.1(b)(2) for the reasons discussed in Part I, *supra*. Accordingly, we need not reach the merits of Blandin's Confrontation Clause claim.

## CONCLUSION

We conclude that the district court did not err in denying Blandin a seven-level downward adjustment under § 2P1.1(b)(2) because Blandin only returned to custody when he was arrested for the separate offense of trespassing. For the same reason, we also conclude that any alleged "testimonial hearsay" error was harmless.

The sentence imposed by the district court is **AFFIRMED.**