*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                          No. 09-5719

WALTER MURPHY WEBB,
                    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 08-00118-001—Amul R. Thapar, District Judge.

Decided and Filed: August 16, 2010

Before: GILMAN and WHITE, Circuit Judges; WATSON, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Stephanie L. McKeehan, London, Kentucky, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Walter Murphy Webb pled guilty to producing counterfeit bills and using the bills to purchase merchandise at several businesses in eastern Kentucky. The district court imposed an above-Guidelines sentence of 37 months' imprisonment. Webb now appeals, arguing that his sentence was

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

both procedurally and substantively unreasonable.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Webb used an all-in-one printer/scanner/copier to create multiple $50 counterfeit bills on June 1, 2006.  The next day, Webb used one of the counterfeit bills to make purchases at the Triple J Oil convenience store in Harlan, Kentucky.  Later that same day, Webb attempted to use another counterfeit bill at the Harlan Exxon Happy Mart, but the clerk concluded that the bill was fake and refused to accept it as payment.  The clerk kept the fake bill, called the police, and turned the bill over to them.  When Webb was arrested shortly thereafter, he had one counterfeit bill on him.  The police also recovered the counterfeit bill used at the Triple J.

Kentucky state police officers subsequently interviewed Webb's wife, Leslee, who died before Webb was sentenced.  She told them that Webb had used counterfeit bills at McDonald's and Smokin Joe's, both in Harlan, Kentucky.  After Webb waived his *Miranda* rights, he was interviewed by the U.S. Secret Service.  He admitted to having used the printer to create the counterfeit bills and also said that he had passed one counterfeit bill at McDonald's, one to a local drug dealer, and one at a Pilot Gas Station in Middlesboro, Kentucky.  Webb also admitted that he had attempted to pass a counterfeit bill at the Harlan Exxon Happy Mart.  In total, the government contended that Webb was responsible for creating at least six counterfeit $50 bills:  the three that were recovered and at least three that the government was not able to recover.

Webb was indicted in October 2008 on one count of counterfeiting a Federal Reserve Note, in violation of 18 U.S.C. § 471; two counts of passing counterfeit notes, in violation of 18 U.S.C. § 472; and one forfeiture count under 18 U.S.C. § 492 and 28 U.S.C. § 2461(c).  Pursuant to a written plea agreement, Webb pled guilty in June 2009 to the counterfeiting count, one of the passing-counterfeit-notes counts (for attempting to use a $50 counterfeit bill at the Harlan Exxon Happy Mart), and the forfeiture count.

The Presentence Report (PSR) recommended a total offense level of 13 and a criminal history category of III, resulting in a Guidelines range of 18 to 24 months' imprisonment.  Included in this calculation was a two-point increase in offense level pursuant to U.S. Sentencing Guidelines (U.S.S.G.) § 2B5.1(b)(2)(A), which applies where the defendant "manufactured or produced any counterfeit obligation or security of the United States."  This had the effect of putting Webb's offense level at 15.  But the PSR also recommended a two-point reduction in offense level for acceptance of responsibility, which reduced the total offense level back to 13.

At sentencing, Webb objected to the application of § 2B5.1(b)(2)(A) on the basis of Application Note 4, which provides that the two-point increase in offense level does not apply "to persons who produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny."  U.S.S.G. § 2B5.1(b)(2)(A) App. Note 4 (2008).  Webb specifically contended that the Exxon Happy Mart store clerk's immediate recognition that the bill was fake meant that the bills were of such low quality that Application Note 4 should apply.  He also asserted that his confession to the Secret Service where he admitted to successfully passing three other bills is not reliable because he was inebriated at the time of the interview.  Webb did not otherwise object to the PSR.

In response, the government called Secret Service Agent Paul McClanahan, who testified that the quality of Webb's counterfeit notes was "decent," that the bills were similar to those he had seen passed successfully, and that the bills in question would "probably" be accepted even if subjected to minimal scrutiny.  The government further contended that there was no evidence in the record that Webb was inebriated when he was interviewed by the Secret Service, which Webb's attorney subsequently admitted.

After hearing testimony and the arguments of counsel, the district court examined the three recovered counterfeit bills and compared them to genuine bills.  The court concluded that the bills looked real and that "if given minimal scrutiny, [they] would probably pass."  In addition, the court noted that, based on Webb's statement alone, three

of the bills were indeed successfully passed.  The court thus applied the two-point increase pursuant to U.S.S.G. § 2B5.1(b)(2)(A).

After discussing Webb's extensive history of substance abuse, the district court imposed an above-Guidelines sentence of 37 months because Webb would not have been eligible for an intensive substance-abuse treatment program if he were sentenced to no more than the top of the applicable Guidelines range (24 months).  Webb now appeals, arguing both that the district court procedurally erred in applying U.S.S.G. § 2B5.1(b)(2)(A) and that his 37-month sentence is substantively unreasonable.

## II.  ANALYSIS

### A.       Application of U.S.S.G. § 2B5.1(b)(2)(A)

We review a sentence imposed by the district court for reasonableness.  *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006).  "The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review. . . .   Review for reasonableness has both procedural and substantive components."  *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007).  A district court commits procedural error by, among other things, "selecting a sentence based on clearly erroneous facts."  *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008) (citation omitted).

In the instant case, Webb disputes the district court's finding that the counterfeit bills could be successfully passed even if they were subjected to minimal scrutiny.  Such a factual finding is reviewed for clear error.  *United States v. King*, 516 F.3d 425, 427 (6th Cir. 2008).  A finding is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. Perez*, 871 F.2d 45, 48 (6th Cir. 1989) (citation omitted).

The purpose of the two-point enhancement in U.S.S.G. § 2B5.1(b)(2)(A) "is to punish those who produce counterfeit items more harshly than those who simply pass the items. . . . [But] [i]f the items are obviously counterfeit, there is less reason to punish

that counterfeiter more severely because the items are unlikely to be accepted and the harm done by the producer is less." *United State v. Baronia*, 287 F.3d 607, 609 (7th Cir. 2002).

The district court correctly noted that this court has used the following five factors to determine the quality of a counterfeit bill and thus whether the Application Note 4 exception should apply:

> (1) physical inspection during the trial or at the sentencing hearing; (2) whether the counterfeit notes were successfully passed; (3) the number of counterfeit notes successfully passed; (4) the proportion of the number of counterfeit notes successfully passed to the number of notes attempted to be passed; and (5) the testimony of a lay witness who accepted one or more of the counterfeit notes or an expert witness who testifies as to the quality of the counterfeit notes.

*United States v. Black*, No. 99-6634, 2000 WL 876509, at *2 (6th Cir. June 21, 2000) (quoting *United States v. Miller*, 77 F.3d 71, 76 (4th Cir. 1996)). We agree that the above factors provide helpful guidance in determining the quality of a counterfeit bill.

Consideration of the first and fifth factors clearly weigh in favor of finding that Webb's counterfeit bills would pass minimal scrutiny. At sentencing, the district court examined the bills and compared their appearance and feel to genuine bills, concluding that "a layperson would accept these notes." In addition, Agent McClanahan testified that the bill quality was "decent," and that even if the bills were subjected to minimal scrutiny, the bills would "probably" pass. He based this opinion on his extensive training, his involvement in over 20 counterfeiting cases, and his experience in comparing hundreds of counterfeit bills to genuine bills. The district court's analysis and the expert testimony therefore support a conclusion that the bills were of sufficient quality that the Application Note 4 exception would not apply. *See Black*, 2000 WL 876509, at *2 (holding that the § 2B5.1(b)(2)(A) enhancement applied where a Secret Service agent testified that the bills would likely pass successfully and where the district court examined the counterfeit bills and compared them to genuine currency).

In contrast, the second, third, and fourth factors are more debatable. The PSR concluded that Webb produced at least six counterfeit bills, three that were recovered and three that were not. Webb never objected to this statement in the PSR. *See United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) (holding that "[t]he district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object" (citation omitted)). The district court concluded that, based on Webb's admissions alone, at least three of the bills were successfully passed—to McDonald's, the drug dealer, and the Pilot Gas Station. Although Webb now argues that he was intoxicated at the time he gave this statement, there is no evidence of this in the record because Webb did not so testify at the sentencing hearing. The statement of Webb's attorney at sentencing regarding Webb's alleged intoxication is not evidence. Moreover, Webb never objected to his admissions as characterized in the PSR. The record therefore supports the finding that at least half of the bills were successfully passed, which in turn supports the conclusion that Application Note 4 should not apply.

Webb responds by arguing that the clerk at the Exxon Happy Mart immediately concluded that the bill was counterfeit because it felt too thick. Although this fact weighs against a finding that the bills would pass minimal scrutiny, it is not sufficient to overcome the district court's own analysis, the testimony of the expert witness, and the fact that at least half of the bills were successfully passed. The district court thus did not clearly err in refusing to apply the Application Note 4 exception for bills that are "so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny."

**B.     Substantive reasonableness of Webb's 37-month sentence**

Webb next contends that his 37-month sentence is substantively unreasonable, arguing that the district court erred by giving improper weight to two of the sentencing factors contained in 18 U.S.C. § 3553(a): (1) the need to protect the public, and (2) providing the defendant with an opportunity for rehabilitation of his substance-abuse problems.

The district court "must consider all of the relevant § 3553(a) factors and impose a sentence that is sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2)." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citation and internal quotation marks omitted). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* Although the district court below imposed an above-Guidelines sentence, such a sentence "is not presumptively *un*reasonable." *See id.* (emphasis in original).

As an initial matter, we observe that the government's brief addresses the split of authority regarding the tension between 18 U.S.C. § 3553(a)(2)(D), which permits a sentencing court to analyze the need to provide "the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," and 18 U.S.C. § 3582(a), which instructs sentencing courts to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." *See In re Sealed Case*, 573 F.3d 844, 848-49 (D.C. Cir. 2009) (comparing cases that have held that § 3582(a) does not bar a court from imposing a longer prison term in order to promote rehabilitation and those that have come to the opposite conclusion). The district court's decision to select a 37-month sentence in order to give Webb the opportunity to receive substance-abuse rehabilitation at least potentially implicates the concerns embodied in § 3582(a). Webb, however, does not argue on appeal that his sentence runs afoul of § 3582(a). We therefore decline to address the issue. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (declining to address an argument not properly raised on appeal in the appellant's opening brief).

Turning now to the reasonableness of Webb's sentence, we acknowledge that the district court gave significant emphasis to protecting the public and the need for Webb to enter a substance-abuse rehabilitation program. In addition to charges for aggravated assault, theft, operating a vehicle on a suspended license, leaving the scene of an accident, forgery, and possession of a controlled substance, Webb had previously been

arrested at least four times for public intoxication and at least twice for driving while intoxicated. The district court's emphasis on these two factors was therefore warranted in light of (1) Webb's lengthy history of substance abuse, (2) the significant number of crimes that Webb has committed while inebriated, and (3) the likelihood that Webb could injure someone while drinking and driving or while committing a similar offense. *See United States v. Tristan-Madrigal*, 601 F.3d 629, 633-36 (6th Cir. 2010) (holding that the weight that the district court gave to the defendant's four prior drunk-driving convictions and the need to protect the public was reasonable and supported an above-Guidelines sentence for an illegal reentry conviction). The weight that the district court gave to these two factors was thus not unreasonable. Indeed, it was justified given Webb's background.

Moreover, the district court discussed several of the other § 3553(a) sentencing factors. This discussion included Webb's family life and upbringing, the question of whether the counterfeit victims had been compensated, and whether Webb's sentence would create a sentencing disparity when compared to other similarly situated defendants. The court also explained that if Webb successfully completed his rehabilitation program, he would receive a 12-month reduction in his sentence. Finally, the court informed Webb that it was imposing a 37-month sentence rather than a 36-month sentence because the latter sentence would not qualify Webb for good-time credits to reduce his sentence even further. In short, the record reflects that the district court carefully considered many of the § 3553(a) sentencing factors, gave appropriate weight to the most relevant factors, and ultimately reached a reasoned conclusion.

Webb argues for the first time on appeal that the district court failed to recognize that his eligibility for the substance-abuse rehabilitation program is within the discretion of the Bureau of Prisons, and that even if he successfully completes the program, the Bureau is not required to reduce his sentence. To support this argument, Webb cites 18 U.S.C. § 3621(e)(2)(B), which provides that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program

may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."

Webb, however, does not argue that a remand is warranted because of the district court's apparent misapprehension. Rather, he asserts that this court's review for reasonableness should be of his 37-month sentence, independent of any potential reduction he may receive. As this opinion makes clear, our reasonableness review is of Webb's 37-month sentence.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.