RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0347p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 08-6520

TARY HOLCOMB,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 08-00017-003—David L. Bunning, District Judge.

Argued: October 22, 2010

Decided and Filed: November 8, 2010

Before: DAUGHTREY, GILMAN, and McKEAGUE, Circuit Judges.

———————

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. James E. Arehart, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. James E. Arehart, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

———————

**OPINION**

———————

RONALD LEE GILMAN, Circuit Judge. Tary Holcomb pled guilty to escaping from a federal prison camp. The district court sentenced him to 10-months' imprisonment, to run consecutively to his undischarged time for a marijuana conviction, followed by three years of supervised release. Holcomb now appeals, arguing that the

1

court miscalculated his U.S. Sentencing Guidelines (U.S.S.G.) range because it did not grant him a seven-level downward departure pursuant to U.S.S.G. § 2P1.1(b)(2) on the basis that (1) he escaped from a nonsecure facility, and (2) he voluntarily returned. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In July 2008, Holcomb was serving a 120-month sentence at a federal prison satellite camp (FPC Ashland) at the Federal Correctional Institute in Ashland, Kentucky (FCI Ashland). Both facilities are federal institutions within the Bureau of Prisons system. FPC Ashland is surrounded by a fence that is topped with razor wire. The front gate, however, is left open during normal business hours. There is a guard station at the front gate that is generally manned 24 hours a day by a correctional officer. But the officer guarding the front gate has additional administrative duties that require the officer to periodically leave the gate unmanned. FPC Ashland inmates are not permitted to enter the guard station after 10 p.m. unless there is an emergency.

The inmates' housing units are behind the guard station and are within the razor-wire fence that surrounds the camp. Prisoners at the camp are informed that they are not allowed to leave the premises without authorization and that any departure without preapproval constitutes an escape.

Sometime between the late evening of July 26 and the early morning of July 27, 2008, Holcomb and three other inmates walked out of FPC Ashland through the front gate without prior authorization. They were driven away from the facility by Kysha Crockwell, who took them to the nearby Knights Inn. Several hours later, Crockwell drove the four inmates back to the camp. After pulling up to the camp entrance, Crockwell saw a sheriff's patrol car in her rear view mirror and informed the inmates of the vehicle behind them. None of the inmates elected to exit her car. Crockwell then drove away from the camp. The Boyd County Sheriff's Office deputy followed and eventually pulled Crockwell's car over for a routine traffic stop at a gas station on Route 60 in Ashland.

Upon pulling the car over, the deputy noticed the occupants' prison uniforms and asked the men if they were inmates. The men replied in the affirmative and, at 2:05 a.m. on July 27, 2008, FPC Ashland officials were notified that Crockwell's car had been stopped and that four men in prison uniforms were inside. In response, FPC Ashland conducted an emergency inmate count, determining that the four men, including Holcomb, were missing from the premises. FPC Ashland officials then proceeded to the site of the traffic stop and, once they ascertained that the men were the missing inmates, the prisoners were transported back to FCI Ashland and placed in the Special Housing Unit.

In August 2008, a federal grand jury sitting in the Eastern District of Kentucky at Ashland returned a two-count indictment against Holcomb and the three other inmates. Count One (the count at issue in this case) charged Holcomb with escaping from the custody of FCI Ashland, in violation of 18 U.S.C. § 751(a). Holcomb originally pled not guilty to this offense but, after appearing for rearraignment, pled guilty to escaping from the camp. He did so without a written plea agreement.

A violation of 18 U.S.C. § 751(a) is a Class D Felony punishable by a term of imprisonment of not more than five years' incarceration, a fine of not more than $250,000, or both, and a period of supervised release of not more than three years. The base offense level under U.S.S.G. § 2P1.1(a)(1) is 13. Holcomb's offense level was reduced by two levels because of his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), resulting in a total offense level of 11. With a criminal history category of III, his Guidelines range was 12 to 18 months of imprisonment.

Holcomb argued that he was entitled to a seven-level reduction in his base offense level pursuant to U.S.S.G. § 2P1.1(b)(2). Under this provision, if a "defendant escaped from nonsecure custody and returned voluntarily within ninety-six hours," without committing any other offense punishable by a term of imprisonment of one year or more, the district court may decrease the base offense level by seven levels. *Id.* The district court heard testimony regarding the following two elements of U.S.S.G.

§ 2P1.1(b)(2):  (1) whether FPC Ashland is a nonsecure facility, and (2) whether the defendants voluntarily returned to the camp.

U.S.S.G. § 2P1.1(b)(2) requires that both of these elements be satisfied before the district court may reduce the base offense level.  Here, the court relied solely on its conclusion that the defendants did not voluntarily return to the camp as its basis for refusing to grant the seven-level reduction.  The court therefore declined to decide whether FPC Ashland is a nonsecure facility.  Holcomb was sentenced to a 10-month term of imprisonment (a below Guidelines sentence) to run consecutively to the term that he was already serving for conspiracy to possess and distribute marijuana.  Holcomb now appeals his sentence.

## II.  ANALYSIS

### A.  Reasonableness review

We review a sentence imposed by the district court for reasonableness.  *Gall v. United States*, 552 U.S. 38, 46 (2007).  "The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review."  *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010) (citation omitted).  "Review for reasonableness has both procedural and substantive components."  *Id.* (citation omitted).

### B.  Holcomb's sentence is procedurally reasonable

When reviewing a sentence for procedural reasonableness, we look at three factors:  whether the district court "(1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen."  *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).  To determine if the district court properly calculated the applicable Guidelines range, we review the district court's findings of fact under the clear-error standard and its legal conclusions regarding application of the Guidelines de novo.  *Id.* at 579.

Holcomb argues that the district court miscalculated the applicable Guidelines range as a matter of law when it denied him the seven-level downward departure under U.S.S.G. § 2P1.1(b)(2). He asserts that FPC Ashland is a nonsecure facility to which he returned voluntarily. Holcomb does not challenge the court's factual findings regarding the question of whether he voluntarily returned to the camp, but rather the application of the "returned voluntarily" standard to those facts.

Because Holcomb was already a confined inmate as a result of his participation in a marijuana conspiracy, his base offense level under U.S.S.G. § 2P1.1(a)(1) is level 13. The district court denied Holcomb the seven-level reduction under U.S.S.G. § 2P1.1(b)(2) based on its finding that he did not voluntarily return to FPC Ashland. Since this finding alone is sufficient to deny Holcomb the reduction, the court did not make any findings regarding whether the camp is a nonsecure facility.

We review de novo the district court's conclusion that Holcomb did not voluntarily return to the camp, as well as its denial of the seven-level reduction under U.S.S.G. § 2P1.1(b)(2). *See Bolds*, 511 F.3d at 579. The question of what constitutes a voluntary return for purposes of U.S.S.G. § 2P1.1(b)(2) is a matter of first impression in this circuit. Application Note 2 in U.S.S.G. § 2P1.1 states that "'returned voluntarily' includes voluntarily returning to the institution or turning one's self in to a law enforcement authority as an escapee (not in connection with an arrest or other charges)." U.S.S.G. § 2P1.1 cmt. n.2.

Several circuits have discussed Application Note 2. Among them is the Ninth Circuit, where it held in *United States v. Blandin*, 435 F.3d 1191, 1195 (9th Cir. 2006), that "regardless of whether [the defendant] had formed the subjective intent voluntarily to surrender, his return to custody cannot be considered voluntary under § 2P1.1.(b)(2) because his willingness to cooperate arose in connection with his arrest for trespassing." Similarly, in *United States v. King*, 338 F.3d 794, 799 (7th Cir. 2003), the Seventh Circuit held that an inmate's willingness to cooperate with a correctional officer only after learning that he could return with the officer or be chased down by the marshals was not the type of voluntary return contemplated by U.S.S.G. § 2P1.1(b)(2). And the

Eighth Circuit held, in *United States v. Pynes*, 5 F.3d 1139, 1140–41 (8th Cir. 1993)*,* that even though the defendant had already arranged for a ride to turn himself in, his return was not voluntary because he "surrendered only when he saw deputy marshals crossing the street to find and arrest him."

Like the defendants in *Blandin*, *King,* and *Pynes*, Holcomb surrendered only after he was faced with the imminent prospect of being arrested. He and his codefendants left FPC Ashland without permission. After visiting the Knights Inn, Crockwell drove all four men back to the camp, pulled up to the entrance of FPC Ashland, and stopped the car. But none of the defendants exited the car after Crockwell informed them that a sheriff's deputy was in the vehicle behind them. The defendants were transported back to FCI Ashland by camp officials only after the deputy approached the car at the gas station and realized that the four men inside were dressed in prison uniforms.

Holcomb argues that the circumstances surrounding his escape are sufficient to find that he voluntarily returned to FPC Ashland within the meaning of U.S.S.G. § 2P1.1(b)(2). His arguments fail for several reasons. First, Holcomb did not return to the camp when he had the opportunity to do so; i.e., when Crockwell drove him and the other three inmates back from the Knights Inn. He could have gotten out of the car at that point and turned himself in. Holcomb's subjective intent to return prior to Crockwell driving away is not sufficient to support a finding that in fact he voluntarily returned. *See Blandin*, 435 F.3d 1194–95. Further, Holcomb admitted his status as an FPC Ashland inmate only after the sheriff's deputy had pulled over the car in which he was riding. We join the other circuits that have addressed this issue and find that a willingness to cooperate arising in connection with the possibility of imminent arrest is not the type of voluntary behavior that U.S.S.G. § 2P1.1(b)(2)'s seven-level downward departure is intended to reward. *See id.* at 1194; *King*, 338 F.3d at 799; *Pynes*, 5 F.3d at 1140–41. Consequently, Holcomb did not voluntarily return to FPC Ashland within the meaning of U.S.S.G. § 2P1.1(b)(2), and he is therefore not entitled to a seven-level downward departure in his offense level. Because the question of whether Holcomb

voluntarily returned to FPC Ashland is dispositive, we have no need to determine whether FPC Ashland is a nonsecure facility.

We must next determine whether the district court properly calculated the applicable Guidelines range. Because Holcomb is not entitled to the seven-level reduction under U.S.S.G. § 2P1.1(b)(2), his base offense level is 13. The court correctly granted him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), which resulted in a base offense level of 11. Based on prior criminal-history points and the points added for the escape, Holcomb has a criminal history category of III. The Guidelines range for a total offense level of 11, combined with a criminal history category of III, is 12 to 18 months of imprisonment, as correctly determined by the district court.

We must also decide whether the district court properly considered the relevant § 3553(a) factors in determining Holcomb's sentence. During sentencing, the court addressed the § 3553(a) factors collectively for all four defendants because the nature and circumstances of the crime were the same for each. In considering the need for the sentence imposed, the court explained that because the escape in this case was factually different from more serious escapes, it would impose a below-Guidelines sentence of 10 months' imprisonment.

The district court also heard arguments from both sides as to whether the sentence should be served consecutively or concurrently. U.S.S.G. § 5G1.3(a) recommends that a sentence for escape be served consecutive to any undischarged term of incarceration because the offense was committed while the defendant was already serving a term of imprisonment. The court followed this recommendation, reasoning that granting a concurrent sentence would be inappropriate in this case because it would send the wrong message to others who are considering escaping from prison. It also addressed the need for avoiding unwarranted sentencing disparities by sentencing Holcomb and two of the other escapees with similar criminal histories to the identical, below-Guidelines, 10-month term of imprisonment.

We must finally determine whether the district court sufficiently articulated its reasons for the sentence chosen. As noted above, the court discussed with particularity the relevant § 3553(a) factors and why it found that Holcomb had not voluntarily returned to FPC Ashland. The court also heard and addressed arguments from both sides on what they deemed to be the correct sentence. Further, the court thoroughly explained why it decided to impose a below-Guidelines sentence. The court's decision was well-reasoned and sufficiently detailed to easily pass muster as procedurally reasonable. *See Rita v. United States*, 551 U.S. 338, 356 (2007) (stating that "[t]he appropriateness of brevity or length, conciseness or detail . . . depends upon circumstances").

## C. Holcomb's sentence is substantively reasonable

Finally, we turn to the substantive reasonableness of Holcomb's sentence. "A properly calculated advisory guidelines range represents a starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). A sentence will be found substantively unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 616 F.3d 605, 610 (6th Cir. 2010) (citation and internal quotation marks omitted).

Here, the district court properly calculated the applicable Guidelines range and discussed the relevant § 3553(a) factors, giving each appropriate weight. The court evaluated the nature and circumstances of the offense and the need for the sentence imposed, determining that a below-Guidelines sentence would best differentiate between this case and other more serious escapes. It also considered the deterrent effects of the sentence, concluding that a consecutive sentence would best deter future escapes. In addition, three of the four defendants (those with similar criminal histories) were given the same below-Guidelines sentence to avoid any unwarranted sentencing disparities. Holcomb's sentence is therefore substantively reasonable.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.